The Chief Justice
delivered the opinion of the court.
This was a bill filed by the appellant, to recover the possession of sundry slaves from the appellees, and to restrain them, in the mean time, from removing the slaves beyond the jurisdiction of the court. The appellants as- *209 Sett their right to the slaves in question, as the heirs of William Hamlet, under and by virtue of a bill of sale executed to him by the appellee, Martin Baker, bearing date the 14th of February, 1787, and recorded in the county court of Halifax county and state of Virginia, and they al-ledge-that the other appellees purchased from Baker, shortly before the commencement of this suit, with full knowledge of their right. The appellees, among other matters of defence, rely that a, court of equity has no jurisdiction of the case, and that the bill of sale executed by Baker to the ancestor of the appellants;, was given without valuable consideration, with an, intent to hinder and delay creditors, and that therefore it was fraudulent and void. And although the appellees, who yvere purchasers from Baker, admit that they had heard of the appellants’ claim, yet they alledge that they were at the same time informed that it was illegal and fraudulent.
?** delay cretin-ors” Sers either or -mith-',ui
perty uesori-ked in such saie’ |>0⅛5" ionoftheven-"",j°g e ()jp fraud. Vide 3 Coke’sRep. ess.’
The court below, on a final hearing, dismissed the bill, and the appellants have brought the cause to this court.
As the law affords a remedy by an action of detinue, or of trover, in a case like the present, it is extremely questionable whether a court of equity can entertain jurisdiction to any extent in such a case: but waiving a decision of this pointy we can have no hesitation upon the merits of the case, in affirming tjie decree of the court below.
The bill of sale, under which the appellants claim, is not only expressly proven to have been executed for the purpose ®f hindering and delaying Baker’s creditors from the recovery of their debts, blit the transaction is accompanied with ail the marks or badges which carry with them internal cvi-deuce of fraud. At the time of executing the bill of sale, Baker was deeply involved in debt; and although it purports to have been made upon valuable consideration, there is no proof of any such consideration having been paid by Hamlet. It contains not only a transfer of the slaves in question, but of all Baker’s property liable to even his beds and other household and kitchen furniture; and though absolute on its face, the possession of the property remained with Baker from the date of the bill of sale until the present time, with the exception of two or three years, when Baker was absent in this country, and had left his family with Hamlet in Virginia. From these circumstances, therefore, independent of any positive proof to that effect, we would be bound to conclude that the bill of sale *210 was, in law, fraudulent; and if so, it is clear that a court of cc¡u'líy cannot enforce it or sustain the appellants’ claim, having for its foundation such a fraudulent transaction. It is true that the bill of sale, though fraudulent and void, as *° credit°rs and purchasers, is nevertheless binding at law upon the parties to it, and that a court of .equity would not interfere in behalf of Baker to set it aside. But it is eqUa]]y true that a court of equity cannot, according to the principles by which it is invariably governed, lend its aid to give effect to the bill of sale, for Hamlet as well as Baker, is particeps criminis, and equally guilty of the fraud; and the rule *dlat in respect to parties to a fraud inpañ delicto melior est conditio defendentis, and most indubitably the appellants, as heirs of Hamlet, can stand in no better situation. than he would have done had he been complainant. Such would have been the case had Baker still retained the possession of the slaves, and had been the only defendant. But having sold the slaves to the other defendants, they must, as purchasers, occupy still more favorable ground. It is contended, indeed, that they are not bona fide purchasers:-^ 1 st. Because they had notice of the appellant’s claim. 2dly —Because the price they gave was not a full one; and 3dly —Because it appears from an endorsement upon the bonds for the purchase money, that a part of the price is not to be paid unless this suit should be determined against the complainants.
A court of tween ** the parties will neither enforce or^va-fraudulent conveyance, but leave the IsvvUeS t0
The analogy supposed in the argument, between the case of notice by a subsequent purchaser of a prior equity, and that of notice of a previous fraudulent sale, certainly does not exist. In the former case, the subsequent purchaser would, in equity, be affected by notice, but in the latter case it has long since been settled, that notice cannot affect him, and this doctrine, we apprehend, is perfectly correct; for the statute declares such fraudulent sales void, not only as to purchasers with notice, but as to purchasers generally whether with or without notice; and on general principles, there is no ground upon which that which is void can be made good by notice.
As to the price agreed to be given for the slaves by the other defendants, to Baker, not being a full one, it may be sufficient to remark, that the price, though not as great as was commonly given for slaves of the same description where the title w'as indisputable, does not appear to be in-adequate, for the slaves in question, incumbered as they *211 «rere, not only by the complainants’ claim, but by another claim which ⅛ proven to be hanging over them, derived from a different source.
pibb and Woodson for appellants, Hardin for appellee.
With respect to the endorsement upon the bonds for the purchase money, purporting that the price, or a part of it, was not to be paid unless this suit should be decided against the complainants; that, from the very nature of the thing, must have been an arrangement made after the commencement of this suit, and was probably entered into as a precautionary measure, to enable the purchasers to indemnify themselves without further trouble in case of an actual loss, so that it can furnish no rational presumption that the purchase which was made before the commencement of the suit, was not firm and bona fide.
Decree affirmed with costs.