CHIEF JUSTICE SIMPSON
delivered the opinion of the court:
In the month of July, in the year 1835, a deed of gift from J. G. Williams to his two infant sons, conveying to them a slave named Jane, and a tract of land, was acknowledged and recorded in the clerk’s office of the county court of McCracken *349 county, in which county the parties resided and the property was situated.
On the 26th of October, 1835, about three months after the execution of the deed of gift, J. G. Williams, the father, sold the same slave, and her child born after the deed was executed, to Robert Enders, for the price of six hundred and fifty dollars, executed to him a bill of sale of that date, and delivered him the possession of the slaves.
One of the donees had died before the sale to Enders. The other donee lived with his father, who remained in the possession of the slave from the time of the gift until the sale was made.
In 1844, Robert Enders, the purchaser, filed his bill in the McCracken circuit court, setting forth the execution of the deed of gift, the subsequent sale to himself, and alleging that he was a purchaser for a valuable consideration, without notice, and that the deed of gift was fraudulently made with the design of making a subsequent sale of the slaves. He made the donor and donee parties to the suit, and prayed that the deed of gift might be set aside, and his title and possession quieted; which relief he obtained by the decree of the court.
On the 13th of November, 1854, William J. Williams, the surviving donee, who had attained the age of twenty-one about two months previously, filed his petition in this case, asserting his title under the deed of gift, alleging that Enders had full notice of the gift when he made his purchase; that the suit in chancery and the proceedings before mentioned were resorted to as a fraudulent device to deprive him of his title; that the decree was procured by fraud and was not authorized by the pleadings and proofs in the case; and he prayed that the decree might be set aside, and one half of the slaves and their hires be decreed to him.
Enders in his answer denies all knowledge of the gift when he made the purchase; denies that the decree referred to was obtained by fraud, or that there was any fraud in bringing and prosecuting his suit; alleges that the gift to the plaintiff was fraudulent, and relies on the proceedings and decree in that suit as a bar to this action.
*350 The court below, upon the hearing, rendered a judgment, setting aside the former decree in favor of Enders, so far as it affected the rights of the present plaintiff, sustaining the plaintiff’s claim to the slaves, and adjudging to him one undivided half thereof, and the hires.
To reverse that judgment Enders prosecutes this appeal.
Under the provisions of the act of 1798, (2 vol. Stat. Law, 1480,) a deed of gift of a slave, when the possession does not accompany the deed, will not pass the title from the donor to the donee unless the deed be actually recorded within the time required by law. Ordinarily a gift, as between the parties, is not complete and does not pass the title, unless the possession be delivered to the donee. If, however, the gift be made by a deed duty executed and recorded, the title as between the parties will pass, although the possession does not accompany the deed. This, however, is the only effect imparted to the deed by its being recorded.
All absolute conveyances of goods and chattels, whether by sale or gift, and whether recorded or not, when the possession remains with the grantor or donor, are fraudulent in law as to creditors and purchasers, the possession being inconsistent with the terms of the deed. The law does not favor an absolute gift more than it does an absolute sale; in either case the conveyance is in law deemed fraudulent, as to creditors and purchasers, unless the possession accompany the sale or the gift.
According to the settled doctrine of this court, however, the possession of the father is the possession of his infant child, where the latter resides with him, and is invested with the title to personal chattels in the possession of the former. (Kenningham vs. McLaughlin, 3 Mon., 30, and Forsyth vs. Kreakbaum, 7 Mon., 97.) Consequently the gift in this case was not rendered fraudulent, merely because the possession of the slave remained with the donor.
A voluntary conveyance is deemed fraudulent in law as to the antecedent creditors of the donor. Its validity, however, as to subsequent creditors, depends upon the intention with which it was executed; as to them, it is not fraudulent merely because it is voluntary; but if they wish to avoid it, they must *351 prove the existence of a fraudulent intent. (3 J. J. Marshall, 290; 5 J. J. Marshall, 555; 4 Dana, 253.)
A distinction, however, has been made, so far as creditors are concerned, between a voluntary conveyance to the grantor’s children and to strangers. In the former case, where there is no actual fraudulent intent, and the gift is a reasonable advancement to the child, considering the donor’s condition in life, and there is ample estate left unincumbered for the payment of his debts, then such conveyance will be valid, even against antecedent creditors. (Trimble vs. Ratliffe, 9 B. Mon., 514.) The construction of the statute of 27th Elizabeth has been more favorable to subsequent purchasers than that given to the 13th Elizabeth as to creditors. As purchasers do not trust to the personal responsibility of the vendor as creditors do to the personal responsibility of the debtor, but advance their money upon a Conveyance of a specific article of property, and upon the faith of acquiring a good and valid title to it, they are regarded as having a higher equity than general creditors. (Salmon vs.Bennett, 1 Connecticut Rep., 525-528.)
The doctrine in England is, that a voluntary conveyance is in law fraudulent and void against a subsequent purchaser for a valuable consideration, even with notice. (Doe vs. James, 16 East., 212, 213; Buckle vs. Mitchell, 18 Vesey, 111.)
The American courts have not, however, carried the doctrine to the same extent, or dealt so rigorously with conveyances merely voluntary. It has been held in several of the states, that a voluntary conveyance is only presumptively fraudulent against a subsequent purchaser for a valuable consideration, without notice; that is, that a subsequent sale to a bona fide purchaser, without notice, is evidence that a prior voluntary conveyance “was fraudulent. (Hudnal vs. Wilder, 4 McCord, 295 ; Bank of Alexandria vs. Patton, 1 Robinson, Virginia, 500.)
The same doctrine was held by the supreme court of the United States in the case of Cathcart et al. vs. Robinson, (5 Peters, 265, 281.)
The cases of Mason and wife vs. Baker et al, (1 Mar., 208,) and of Lewis vs. Love's heirs, (2 B. Mon., 345,) are supposed to favor the doctrine that a voluntary conveyance, as against a subse *352 quent purchaser for valuable consideration, with or without notice, is fraudulent in law. In both of these cases, however, the conveyances were decided to be actually fraudulent, and were not held to be fraudulent merely because they were voluntary; and being actually fraudulent, they were deemed void as against a subsequent purchaser for a valuable consideration, even with notice. In the last named case, it is said in the opinion, that, “ as a purchaser, the mere fact that the deeds are voluntary, render them at least prima facie fraudulent and void as to him.” Nothing, however, is said in this connection of the effect that notice would be entitled to in such a case in determining the question of fraud.
The tendency of the modern decisions in this, as well as in the courts of most of the other states, has been to leave the question of fraud open to investigation to be determined by all the facts which tend to show the actual intention with which the conveyance was executed. The doctrine of constructive fraud has not been very favorably received, and has been strictly confined to that class of cases to which it had been previously authoritatively extended.
Such, also, is the tendency of modern legislation on the subject ; and with regard to voluntary conveyances, it .is enacted by the Revised Statutes, (page 363,) that they shall not, on that account alone, be void as to purchasers with notice. Whether they are to be deemed void where the purchase is made without notice, the statute does not declare. This case has, however, to be decided on the law as it existed at the time the voluntary conveyance and subsequent purchase were made, without regard to the provisions of the Revised Statutes.
According to our exposition of that law, a voluntary conveyance should be deemed valid, against a subsequent purchaser with knowledge of its existence; that is, such a conveyance should not, merely because it is voluntary, be regarded as fraudulent and void as to a subsequent purchaser with actual notice. Such a purchaser is not deceived or misled, nor does he make his purchase under the belief that he is acquiring a clear title to the property. He is not entitled to be considered as a Iona fide purchaser. Having knowledge of the previous voluntary *353 conveyance, he should be regarded as combining with the grantor to defraud the donee. He has, therefore, no claim to the protection which the law affords against voluntary conveyances. If, however, the conveyance be not only-voluntary, but actually fraudulent, then a subsequent purchaser has a right to disregard it altogether, and will not be affected by notice. He is under some obligations to respect the rights of an honest donee, who has acquired the property without any fraud on theJ part of the donor, but under none whatever to respect a fraudulent conveyance, which confers no rights on the grantee, so far as creditors and purchasers are concerned.
A voluntary conveyance should, however, be deemed presumptively fraudulent against a subsequent purchaser for a valuable consideration,.without actual notice. It should not, in our opinion, be deemed absolutely void; but the question of fraud should be left open for investigation. The subsequent sale, however, raises a strong presumption of fraud in the gift, and imposes the burthen of proving that it was made bona fide on the person who claims under the voluntary conveyance.
Constructive notice, arising from the recording of the conveyance, is not sufficient to affect the conscience of the purchaser. Actual knowledge is necessary for this purpose. He must be apprised of the existence of the gift, otherwise he cannot be said to combine with his vendor to avoid it. He may be as much deceived and cheated by the sale to him, where the voluntary conveyance is recorded, as where it is not recorded. There may be constructive notice where there is no actual notice. The only reason why a voluntary conveyance is not deemed fraudulent as to a purchaser with notice is, because, having knowledge of its existence, he is himself not regarded as a bona fide purchaser. But that reason ceases where he is ignorant of its existence, and does not apply where he has constructive notice only. This seems to be the doctrine which was recognized in the foregoing case of Lewis vs. Love's heirs, although it is not very distinctly announced. In the case of Cathcart vs. Robinson, decided by the supreme court of the United States, it was held that Robinson was a purchaser without notice, although it appears from the statement of the facts that *354 the voluntary conveyance had been duly recorded in the proper office. But independently of any adjudication on the subject, the reason for discriminating between a purchaser with and without notice, necessarily leads to the conclusion that actual notice is indispensable, and without it the distinction cannot be sustained. The rule of caveat emptor does not apply. A voluntary conveyance is prima facie fraudulent as to a subsequent purchaser for a valuable consideration. If, however, he purchases with notice of the gift, he cannot avail himself of this presumption. The law does not, however, so far favor the donee, as to exact from the purchaser the exercise of any diligence to ascertain the condition of the title. Consequently he is not affected by constructive notice.
It follows, therefore, that unless Enders, at the time of his purchase, had actual notice of the previous gift, that as to him it must be regarded as presumptively fraudulent, and it devolves on the plaintiff to remove the presumption of fraud, by proving that the gift was fair and bona fide.
Notice is charged by the plaintiff, and positively denied by Enders in his answer. The testimony of the donor is alone relied upon to prove notice. He states that he informed Enders of the gift before he made the purchase.
To counteract this testimony, it is proved that the price paid for the slaves was their full value at the time of the purchase. That another person had, at the request of the vendor, and in his company, gone to his house to look at the slaves, a day or two previous to the sale; and although he offered on that occasion to sell them, yet he made no allusion whatever to the gift he had made to his children. It is proved by another individual that he was present at an interview between Enders and the vendor when they were negotiating the terms of the sale, and also at the time when the terms of the sale were agreed upon, arid he heard nothing said about the gift, and was entirely ignorant that one had been made.
Under the provisions of the Code of Practice, one witness may be sufficient to sustain a plaintiff’s claim, notwithstanding the denial by the defendant in his answer of a material fact in issue between the parties. In this respect the previ *355 ous rule, which required two witnesses, or one witness and corroborating circumstances, to outweigh the denial in the answer, has undergone a material change.
But we do not regard the testimony of the witness in this case, under all the circumstances and opposing testimony, as being sufficient to establish the fact of notice to the purchaser.
In the first place it may be remarked, that the transaction itself, as well as his relation to the donee, is calculated very seriously to affect his credibility.
In the next place, it is intrinsically improbable that any man of common sense or ordinary prudence would purchase a slave, and pay for it its full value, knowing at the same time that it had been previously conveyed by a recorded deed to the vendor’s children.
And, again, if the vendor apprised Enders of the gift, how did it happen that he did not also make it known to the other person to whom he proposed selling the slaves, and who, at his instance, went with him to his house to look at them? And how did it happen that no person whatever heard him make any allusion to the subject, although other persons were present when the parties were conversing about the trade ? In addition to all this, it is proved that Enders, in 1844, upon being informed that the deed of gift had been made and was upon record, seemed to be very much astonished, and immediately instituted a suit to vacate the deed as fraudulent.
It has indeed been argued, that inasmuch as one of the donees had died, and the other was, or had been sick, Enders was willing to purchase the slaves, and risk the life of the surviving donee. It is utterly incredible, however, that any man in his senses would agree to pay a full price for a slave, and only acquire a title that would become perfect in the event of the death of an infant, although the infant may have been in bad health at the time.
In view of all the facts and circumstances which the testimony develops, we are clearly of the opinion that the purchaser had no knowledge of the gift at the time of his purchase. The presumption, therefore, that the gift was fraudulent, arises in his favor, and it devolves on the donee to remove this pre *356 sumption, otherwise his claim cannot prevail against the defendant.
■ To repel the presumption of fraud, he proved by the donor that he owed very little at the time the deed of gift was executed ; that he and his two children were all sick at that time, and that he had no intention to defraud Enders or any one else, but made the deed in good faith to protect his two infant children.
It was also proved that the deed of gift embraced all the donor’s property, except some personal chattels and a lot in Paducah, for which he held the vendor’s title bond, and which bond he had also assigned to his two children, but retained the possession of it himself. It also appeared in evidence that he had continued in the possession of the tract of land contained in the deed of gift until the time the proof was taken in the present action, using and enjoying it as if it were his own property, but that during all that time the plaintiff had continued to reside with him.
An attempt is made to account for the execution of the deed of gift, on the ground that the donor was in bad health, thought it probable that he might die, and deemed it advisable, for that reason, to make some provision for his infant children. That motive, however, could not have induced him to make the gift, because, had he died, the donees being his only children, would have been his heirs-at-law, and as such, entitled to his estate.
He says himself that he made it to protect his infant children. Against whom or what claim did he desire to protect them ? This he fails to explain. If he were not in debt, it could not have been made to protect them against his creditors; and as they were his only children, it could not have been made to secure the property to them, in the event of his death, against other claimants.
Some unexplained motive must have induced the execution of the deed and the transfer of the title bond for the lot in Paducah. The secret transfer of the title bond renders the whole transaction suspicious.
If the donor made the gift to protect his infant children, as he says he did, is it not a little singular that he should himself, within twip or three months thereafter, wholly disregard the *357 gift, and the protection which it was to afford the donees, and make sale of a part of the same property? If he made the gift to protect his children against the effect of any sale that he might make of the property, then his conduct is perfectly consistent, and we are furnished with an explanation of the protection which he intended that the gift should afford them. That kind of protection, however, the law denounces as fraudulent on the part of the donor. If he contemplated making a sale of the property at the time he made the gift, that itself would render the gift actually fraudulent as to a subsequent bona fide purchaser.
The presumption of fraud in such a case as this can alone be repelled by the most satisfactory evidence that the voluntary conveyance was executed honestly, and without any intention to defraud subsequent purchasers. The evidence, in our opinion, rather tends to strengthen than to overcome the presumption of fraud which arises by law out of the conduct of the donor in making the subsequent sale.
We do not deem it necessary to decide whether the fact that the plaintiff, in the suit which was brought against him by Enders in 1844, made his answer, which was filed by his guardian ad litem, a cross-bill against the complainant, and prayed for the same relief which he seeks in the present action, would preclude him from the right of reinvestigating the same matters which were put in issue in that suit, and adjudged against him, or not; for conceding that he has that right, we are still of opinion he has failed to show himself entitled to any relief.
Wherefore, the judgment is reversed, and cause remanded with directions to dismiss the plaintiff’s petition.