SARAH TILDEN & others *vs.* JOHN TILDEN, Executor.

Upon the offer for probate of a will, not in the handwriting of the testator, but signed by him, with the usual attestation clause added, signed by three witnesses, one witness testified that he and the second witness signed it at the same time, in the presence and at the request of the testator, without reading it or being told that it was a will, and that the testator directed him where to put his name, but did not sign it in his presence, nor say the signature was his. The second witness testified that the testator, after requesting them to sign it, signed it himself, and declared it to be his will, and then they signed it, and his impression was that the third witness was then present. The third witness testified that the other witnesses did not sign in his presence; that the testator brought the paper to him, and requested him to witness it, which he did in the testator's presence, but without reading it; that he thought the names of the other witnesses were then upon it, but could not say whether the testator's name was; and that the testator did not sign it in his presence, or say anything about his signature. *Held*, that this was sufficient evidence of the execution and attestation of the will.

APPEAL by the heirs at law of Thomas Tilden, of Roxbury, from a decree of the probate court of the county of Norfolk, establishing an instrument as his last will. The questions, whether the will was duly attested by three subscribing witnesses, and whether the proof was sufficient in law to sustain the will, were submitted to the decision of the court upon an agreed statement of the facts, and of the testimony of the witnesses, the material parts of which were as follows:

The will is not in the handwriting of Thomas Tilden ; but it is subscribed by him, followed by this attestation clause :

" Signed, sealed, published and delivered by the abovenamed Thomas Tilden, to be his last will and testament, in the presence of us, who at his request and in his presence have hereunto subscribed our names as witnesses to the same.

" John Hunt,
" Edwin Lemist,
" John W. Lord."

John Hunt testified : " Mr. Tilden came to my factory, and my impression is that he had a paper in his hand. He said to me, ' I wish you to go with me to witness this.' He did not call it his will. We went up to Mr. Lemist's store. After we had entered, he opened a paper, laid it down on Lemist's desk,

and said, ' Put your name there ' — directing me. I did so, and Lemist put his on, and we came off. I did not read a scrap of the paper. I did not see his signature at all. He did not sign it in my presence, nor call my attention to it, as being his signature. My recollection is positive, and I have no doubt the facts are just as I have stated. No other persons were present. Some years subsequent I witnessed a will, and then I saw another form of witnessing, which I thought if important in one case, was in the other. I then told the old gentleman of the circumstance, saying to him that I did not think his will was legally witnessed. My reason for doing this was because I did not see his signature. He made no answer. I had known Mr. Tilden ever since I was a schoolboy, for fifty years."

Edwin Lemist testified : " The late Thomas Tilden came to my store in Roxbury in company with Mr. Hunt. They came directly to the back part of my store, where my desk stood. Mr. Tilden took from his pocket a folded paper and laid it upon the desk, and when he had adjusted his spectacles, he said, ' Gentlemen, I wish you to witness my signature to my will.' I took from the stand a steel pen and handed it to him, with which he signed his name to said paper, in the presence of Mr. Hunt and myself. Mr. Hunt signed his name as a witness, and I did the same, in the presence of Mr. Tilden. The paper was not read in our hearing, nor did we read it that I know of. I had upon my desk an inkstand, and in it usually kept three steel pens. Mr. Tilden used the same ink, I have no doubt, but think he may not have used the same pen that Mr. Hunt and myself did. Mr. Tilden thanked us for witnessing the will, bade us good morning, and left. The impression is very strong on my mind that Mr. Lord was present when the will was signed."

John W. Lord testified : " The will was signed by me, in my counting room, in Roxbury. Mr. Tilden came in with the paper, and said, ' I wish you to witness this.' No one came with him, and no one else was present. I think the names of the other witnesses were on at the time. I cannot say whether Mr. Tilden's name was on or not when I signed my name. He did not sign his name in my presence. He did not say any-

thing about his signature, or make any allusion to it. When I signed, he was in the doorway. After the paper was signed, he took it away. I think Mr. Tilden's position was such that he could see me sign my name. I have no recollection of reading any part of the paper. I was not present when Mr. Hunt and Mr. Lemist signed their names."

Peter Butler, a competent expert, testified that, in his opinion, the signature of Mr. Tilden to the will was made with other ink than that used by Messrs. Hunt and Lemist.

This case was argued at Boston in January 1859.

*W. S. Leland,* for the appellants. There were no acts or words equivalent to a signing by the testator in the presence of three witnesses, as required by the Rev. Sts. *c.* 62, § 6. There must be a perfect execution in the presence of each witness. Only one of the witnesses testifies that the testator signed in his presence; the two others testify positively that he did not; and as the will was not in the testator's handwriting, and all the witnesses testify that they did not read the attestation clause, there is no room for presumption in favor of the will. To establish the will, under these circumstances, would be to take a step beyond any adjudged case, and entirely disregard the statute of frauds. *Rutherford* v. *Rutherford,* 1 Denio, 33. *Lewis* v. *Lewis,* 1 Kernan, 220. *Rogers* v. *Diamond,* 13 Ark. 474. *Boldry* v. *Parris,* 2 Cush. 438. *Hall* v. *Hall,* 17 Pick. 379. *Dewey* v. *Dewey,* 1 Met. 349. *Hogan* v. *Grosvenor,* 10 Met. 54. *Osborn* v. *Cook,* 11 Cush. 532. *White* v. *British Museum,* 6 Bing. 310. *Wright* v. *Wright,* 7 Bing. 457. *Hudson* v. *Parker,* 3 Notes of Cases, 236. *Beach* v. *Clarke,* 7 Notes of Cases, 120. *Ilott* v. *Genge,* 3 Curt. Eccl. 181. 1 Jarman on Wills, 72.

*J. J. Clarke,* for the appellee.

DEWEY, J. The testimony of Edwin Lemist, if believed, establishes the fact that this instrument was executed by the testator, in the presence of himself and John Hunt as witnesses, under accompanying circumstances that present a case as to the two witnesses that would not have been questioned even before the late cases of *Hogan* v. *Grosvenor,* 10 Met. 54, and *Osborn* v. *Cook,* 11 Cush. 532. It is true that Hunt does not recollect all

the facts stated by Lemist, and now declares that the testator did not actually sign it in his presence, and did not call it his will. But Hunt says that the testator asked him to witness the instrument, produced the instrument, laid it on Lemist's table, and said, " Put your name there," directing him as to the place. Upon looking at the will and the place where he was directed to sign, it will be seen to have had the full attestation clause, " signed, sealed, published and delivered, by the abovenamed Thomas Tilden, to be his last will and testament, in the presence of us, who at his request and in his presence have hereunto subscribed our names as witnesses to the same." The testimony of Lemist, being positive in its character, is rather to be taken than the negative testimony of Hunt as to the testator's not signing it in his presence, nor declaring it to be his will; as the omission of Hunt to state this fact might result from mere failure of memory.

The only difficulty in the case arises upon the fact of a proper attestation by the third witness, John W. Lord. In reference to this witness, it is said that there was no publication of the will by the testator, no actual signing in his presence, no direct acknowledgment that he had signed the paper, and no knowledge on the part of the witness whether the testator's signature was on the paper at that time. But we have the fact that the testator came to the counting room of Lord with the paper in his hand, and said to the witness, " I want you to witness this." We have the further facts that he had previously signed the paper, and that the names of the other witnesses were already on the same, written under the attestation clause already quoted. Lord says he thinks the names of the witnesses were there. He must, of course, have seen them there, and the attestation clause was before him and to it he attached his signature. The testator came there from Lemist's store, where he had just said to the other witnesses, " Witness my signature to my will." He was the sole agent in procuring the attestation of the witnesses. He was the keeper of the instrument. It had already been signed by him, and all the circumstances tend to show, beyond any doubt, that he was fully

10 *

cognizant of the nature and purposes of the instrument. It is true that the will was not in his handwriting; and therein the case differs from *Hogan* v. *Grosvenor* and *Osborn* v. *Cook*, above cited. But in the absence of this fact we have the other cir-cumstances already alluded to, of the undoubted knowledge of the testator of the character of this paper, and we have the an-cient form of an attesting clause, declaring it to be his last will and testament. So far as the fact is material that the testator was fully cognizant that this paper was his last will and testa-ment, the evidence is quite sufficient to find this fact from. It was not necessary that the witness Lord should know the character of the instrument. It was enough that the testator had actually signed it, knowing it to be his last will and testa-ment, and designing to have it duly executed as such, had so declared it, as testified by Lemist, and had called upon Lord to attest his execution of an instrument, whose character he well knew, by the request, "I wish you to witness this," and that thereupon the witness signed this attesting clause.

. This subject has been much considered, and the authorities cited, in the cases already referred to, and in *Dewey* v. *Dewey*, 1 Met. 349, and *Nickerson* v. *Buck*, 12 Cush. 339, and it is only necessary here to refer to those cases. In the opinion of the court, the evidence was sufficient to authorize finding this in-strument to have been duly signed by the testator, and duly attested as his last will and testament.

*Decree of the court of probate affirmed.*