GEORGE W. ELA & others, Executors, *vs.* THOMAS EDWARDS.

The following proof was offered of the execution of a will entirely in the handwriting of the testatrix and signed by her, to which three other persons had signed their names in the usual place for the signatures of witnesses, but without any attestation clause. The person whose name came first testified as follows: " She passed me a package of papers; asked me to sign my name as a witness; told me where to sign, on the left side." The person whose name was last testified : " She said she wanted me to witness a document; that she had been making a little disposition of her effects, and would like to have me sign it as a witness. She put her finger to the line where she wished me to sign." It appeared that the person whose name was signed between the names of these two was out of the jurisdiction of the court, but had resided in the immediate neighborhood of the testatrix at the time when the will purported to have been executed, and it was also proved that the signature was genuine. *Held*, that this was sufficient proof, in the absence of any evidence or allegation of fraud, of an execution of the will in conformity with the requirements of Rev. Sts. *c.* 62, § 6.

It is no valid objection to a will offered for probate, that it is written on several separate pieces of paper, if the several pieces are connected in their provisions, forming a connected series, and are handed by the testator to the attesting witnesses at the time of their subscription.

A will, not under seal, executed before the passage of *St.* 1855, *c.* 304, by a married woman residing in this commonwealth, is a valid disposition of personal property, the right to dispose of which by will has been reserved to her by an antenuptial indenture made between her and her husband in contemplation of marriage without the intervention of a third person as trustee; although, at the time of entering into the contract and of the marriage, the parties resided in another state, by the laws of which a disposition by will under the contract would be ineffectual unless made under seal.

APPEAL from a decree of the probate court, disallowing an instrument written on seven leaves of paper and offered for probate as the last will of Susan S. Edwards. At the hearing in this court, *Hoar*, J. was of opinion that the decree should be affirmed, but reported the case for the decision of the full court, in whose opinion it is stated.

*F. H. Dewey*, for the appellants.

*E. Mellen & L. H. Boutell*, for the appellee.

DEWEY, J. The question before us is, whether the evidence reported in this case sustains the burden resting on the party offering this instrument for probate, as to the proof that the same was executed in conformity with the provisions of the Rev. St. *c.* 62, § 6, requiring that it " be attested and subscribed in the presence of the testator by three or more competent witnesses."

Our own reported cases have disposed of many questions that might otherwise have been raised upon facts like those in the present case. It is not necessary that the attesting witnesses to a will should subscribe their names in the presence of each other, nor that they should see the testator sign his name, or in express terms declare the signature to be his. *Dewey* v. *Dewey*, 1 Met. 349, and cases there cited. Nor is it necessary that the witnesses should see his signature on the paper, or know from him or any other source that the instrument which they attest is his will. *Dewey* v. *Dewey*, above cited. *Hogan* v. *Grosvenor*, 10 Met. 56. *White* v. *Trustees of British Museum*, 6 Bing. 310. *Wright* v. *Wright*, 7 Bing. 457. In *Osborn* v. *Cook*, 11 Cush. 532, no one of the witnesses knew that it was a will that they were attesting. The signature of the testator may be made known to the witnesses in other modes than an express declaration to them by the testator that the signature is

his. Any act or declaration that carries by implication an averment of such fact is equally effectual. *Nickerson* v. *Buck*, 12 Cush. 342.

In *Tilden* v. *Tilden*, 13 Gray, 110, as to one of the witnesses, only this appeared, that the testator presented the paper and said, " I wish you to witness this." He did not say anything about his signature or make any allusion to it. There was other evidence to show that the testator's name was written on the paper before this, and that the testator knew the character of the instrument.

But the case of *Hogan* v. *Grosvenor*, 10 Met. 56, in reference to one of the attesting witnesses to that will, is so exceedingly like the present in regard to the question of attestation by two of the witnesses to the present will, that it is proper to refer to it more particularly. In that, as in the present case, the will was in the handwriting of the testator. The testator there took the paper from his desk, asked the witness to sign it, and pointed out the place where he wished him to put his name. The witness did so, not knowing what the paper was, and not noticing the signature of the testator on the paper. This was held a good attestation of the will.

That case perfectly meets the case at bar as to the first and third attesting witnesses to this will. It is strikingly similar in its facts. There as here the will was in the handwriting of the testator, prepared by himself and kept in his own custody. The first witness, Hannah E. Towle, says, " She " (the testatrix) "passed me a package of papers. She asked me to sign my name as a witness, told me where to sign — on the left side." To Sarah A. Hersey, (then Sarah A. Gray,) " she said she wanted me to witness a document; that she had been making a little disposal of her effects, and would like to have me sign it as a witness. She put her finger to the line where she wished me to sign." In fact the case as to each of these witnesses is somewhat stronger than that of *Hogan* v. *Grosvenor*, as the request here was, not merely to sign it, but to " sign it as a witness." To one of these witnesses she went even much further. She expressly called it a " disposal of her effects."

There is nothing lacking as to the proof of attestation by these two witnesses, that the law deems essential to a valid at-testation of a will. The paper is in the handwriting of the testatrix and produced from her own custody. She knew what the document was, and personally solicited these witnesses to subscribe the same. The fact that she was thus obtaining the attestation of witnesses, and the directions which she gave as to signing their names, furnish strong presumptive proof that she had signed it. As was said by the court in *Dewey* v. *Dewey*, 1 Met. 354: " It can hardly be supposed that the testator, who was by his own active agency procuring the authentication of the instrument by the requisite witnesses, would have omitted the first steps necessary to its due execution, viz. the signature by himself."

It is said in the case of *Hall* v. *Hall*, 17 Pick. 379, and other cases, that it must appear that the testator knew that it was his will which the witnesses attested. The present case falls fully within that rule. As already stated, the entire will was drawn up by the testatrix in her own handwriting, kept in her own cus-tody, and these two witnesses procured by her personal appli-cation to them to sign the paper thus drawn up and presented to them by herself.

Unless we are prepared to overrule our own decisions, and particularly the case of *Hogan* v. *Grosvenor*, we must hold that, as to the first and third names upon this instrument, they are sufficiently shown to have been attesting witnesses to this in-strument, and that they attested and subscribed the same in the presence of the testator in the manner required by law.

The further inquiry is as to Maria A. Merriam, appearing on the paper as the second name in the order of names of the three witnesses. At the hearing of this case this witness was not present. It was admitted that she was without the jurisdiction of this court, being now a resident of Davenport in the State of Iowa. It was in evidence that she was a resident in Massa-chusetts at the time when this will purports to have been ex-ecuted, and was then living at Hayward Place, that being the same place where the testatrix resided. By competent and proper

evidence as to her handwriting, the signature was shown to be in her own handwriting, and that such is the fact is not controverted. Do the facts thus stated, with the other evidence in the case, authorize us to find that Maria A. Merriam duly attested this instrument ?

The general principle as to an attesting witness who is out of the jurisdiction of the court is that you may offer proof of his handwriting, and that being established, it is *prima facie* sufficient. *Valentine* v. *Piper*, 22 Pick. 85. *Sluby* v. *Champlin*, 4 Johns. 461. *Jackson* v. *Cody*, 9 Cow. 140. *M'Pherson* v. *Rathbone*, 11 Wend. 96. It will be seen that in such a case the admission of secondary evidence is allowed upon the same principle as if the attesting witness was dead. As to wills, if the witness be out of the jurisdiction, the same rule of admitting secondary evidence applies. *Carrington* v. *Payne*, 5 Ves. 411. *Miller* v. *Miller*, 2 Bing. N. C. 76. *Smith* v. *Jones*, 6 Rand. 33.

We suppose that this would not be controverted in the cases of wills, where the signatures of the witnesses were attached to an attesting clause, " signed, sealed, published, and declared by the above named Susan S. Edwards to be her last will and testament in the presence of us, who in her presence and in presence of each other have hereunto subscribed our names as witnesses." But in the present case no statement of this kind or any portion thereof precedes the signatures of the witnesses. Their names are found in the usual place of attesting witnesses, but without any attestation clause. Having been long accustomed to a general practice of introducing a prescribed form of an attestation clause in wills, its absence at first view strikes us as a very serious, if not fatal, omission. Yet to a great extent this form includes matters not essential to have been done, or to be proved to have been done, to entitle the will to probate. The single requirement of the statute is that the instrument " be attested and subscribed in the presence of the testator by three or more witnesses." Even as to this, though it be essential that the facts be so established by the evidence, yet neither the statute nor the decisions of the courts require that it be recited in the form of an attestation clause.

In the early case of *Hands* v. *James*, Com. R. 531, this point came directly before the court, there being an entire omission, in the attestation clause, of what was the material fact, viz. that they had subscribed their names as witnesses in the presence of the testator. In that case the three subscribing witnesses were all dead, and the only proof that could be given was that of their handwriting, corroborated by the surrounding circumstances, if any such existed. The court held that this omission did not prevent the probate of the will, saying that it is not required by the statute that in their subscription as witnesses they should take any notice of the fact that it was done in the presence of the testator; and adding further, "In case the witnesses be dead, there cannot probably be any express proof; then, as in other cases, the proof must be circumstantial." In alluding to the circumstances, a prominent one noticed by the court was the fact that "three witnesses have set their names, and it must be intended they did it regularly." It was further said that, "if inserted, it does not conclude the parties, nor does the omission to state it conclude it was not so, and therefore must be proved by the best proof the nature of the thing will admit of."

The same question arose in a subsequent case of *Croft* v. *Pawlet*, 2 Stra. 1109, and was decided in the same way. There, the witness being dead, the jury were left to infer the fact that the attestation was in the presence of the testator, from the circumstances disclosed in the case. In *Osborn* v. *Cook*, 11 Cush. 532, where the will was sustained, the only attesting clause was "witnesses," under which the names of the subscribing witnesses were written. In the case of *Fry's Will*, 2 R. I. 88, where there was no attestation clause other than the word "witness," one of the subscribing witnesses having deceased, upon proof of the handwriting of the subscribing witness and of the testator, it was held to be the *prima facie* presumption that all the requisites of the statute had been complied with. In *Jackson* v. *Christman*, 4 Wend. 277, the court held that from the signatures of the witnesses, all the statute required might be presumed to have been complied with. In 1 Jarman on Wills,

(4th Amer. ed.) 74, it is stated that the attestation clause is not necessary to constitute a valid attestation of a will by the subscribing witnesses. In *Roberts* v. *Phillips*, 4 El. & Bl. 450, it is said "that it never has been held that a testimonium clause is necessary, or that the witnesses should be described as witnesses; nothing more is required than that the will should be attested by the witnesses."

It seems therefore to be well established that the fact of the want of an attestation clause does not invalidate the will. It does not, in the case of the death or absence from the jurisdiction of the court of one or all the witnesses, defeat the probate of the will, but only changes the nature of the proof. Instead of its being shown by the attestation clause that there was a compliance with the statute, the court, or jury, if the case is tried by a jury, are to be reasonably satisfied of the fact of a proper attestation from other sources and the circumstances of the case.

What are the circumstances in the present case? The first and leading one is, that we find a paper drawn up by the testatrix, written wholly by her own hand, purporting to be a will, and her name attached thereto, with great particularity as to her place of residence, and the time at which she executed the same, and borne thereupon in the proper place for attesting witnesses the names of three persons duly written thereon. Two of these three persons are found living within this commonwealth, and they both testify that the testatrix sought them as witnesses; that she took the paper from her own custody, asked each of these witnesses to sign as a witness, and pointed them to the proper place on the left-hand side to put their names, and had them sign their names in her presence, and she then took the paper again into her own possession. In both of these cases all was done in relation to procuring the signatures of these two witnesses by the testatrix herself. She knew the character of the instrument, because she wrote it. She knew the character of the instrument, because she told the third witness, when she requested her to sign it, "that she had been making a little disposal of her effects, and would like to have her sign it as a witness." These things are proved to have

taken place with regard to two of the witnesses. Is there any reason to doubt that the other one also signed as a witness in her presence? The three names appear written on the will. No fraud being suggested or attempted to be shown, we are in fairness to assume that the names were written in the order they appear on the instrument. The name of Maria A. Merriam, whose attestation we are now considering, appears as the second in order. That it is in her handwriting is fully proved and not controverted. That she was at the time of the execution of this will resident in Massachusetts, and in the immediate vicinity of the testatrix, is shown. Assuming it to be true that her name was written, as it appears to be, the second on the paper, we have abundant evidence of the signature of the testatrix being on the paper at the time, from the facts in evidence as to what took place between the first witness and the testatrix — facts which, as we have shown, require us to find that the will was signed by the testatrix when the first witness attested it. All that is further required to be presumed from the surrounding circumstances is, that the second name on the paper was written thereon as an attesting witness at the request and in the presence of the testatrix. The proof of this witness being out of the jurisdiction is full. The ordinary secondary evidence is resorted to, and the proof of this being in the handwriting of the absent witness is unquestioned. We find her name there as the second of three witnesses whose names appear upon the will with the accompanying evidence as to the manner of execution by the first and third, and the further fact that the will was in the handwriting of the testatrix and always in her custody. We have, then, a strong case of *prima facie* evidence that the signature of the second witness, as well as the others, was made at the request and in the presence of the testatrix. How would it be in the ordinary case of the death of one or more of the witnesses to a will, as to supplying the proof of the execution? Could we expect to make a stronger case than is made as to the second witness, where the several witnesses had separately attested the will, as they may and often do? The obvious policy of the law, as heretofore

declared in this commonwealth, has been that no man's will should be defeated through the want of memory on the part of the attesting witnesses to the facts essential to a good attestation; and in furtherance of the same object, every fair and reasonable intendment should be made to prevent a will from being defeated by the want of direct evidence as to the attestation, occasioned by the death or removal of the witnesses beyond the jurisdiction of this court.

In the opinion of the court, the facts in the case and the surrounding circumstances authorize the inference that this instrument was duly attested by the three witnesses.

A further objection was taken to the probate of this instrument, that it was written on several separate pieces of paper. We do not understand that this fact is fatal to the validity of the will. In the case of *Bond* v. *Seawell,* 3 Bur. 1773, all that was required was that all the separate sheets of paper must be in the room, and in the presence of the attesting witnesses. This was the view taken in *Gass* v. *Gass,* 3 Humph. 278, and in *Wikoff's Appeal,* 15 Penn. State R. 281. In the present case the different papers are obviously connected in their provisions, and are sufficiently shown to have composed a connected series, and the same that are shown to have been attested by the witnesses.

The further point was taken in behalf of the appellee that this will should not be proved and allowed, as the testatrix was a feme covert at the time of executing the will.

If the authority for making this will depended solely upon the general statute authorizing the disposition of property by will, Rev. Sts. *c.* 62, or upon the particular provisions of the *St.* of 1842, *c.* 74, or the *St.* of 1845, *c.* 208, it would be found unavailing. Nor do we perceive that the *St.* of 1855, *c.* 304, which was enacted after the execution of this will, can be construed to have a retroactive operation, and to sustain this will, which was already made.

The authority for making this will, if it exists at all, is under the rules of law applicable to antenuptial contracts. When made in pursuance of such a contract, the instrument is not

strictly a will, but an appointment and disposition of property, which the husband, by his covenant entered into before marriage, is bound to allow. Looking at the case in this aspect, the sole inquiry is, whether by force of any antenuptial contract a power was legally reserved to the testatrix to dispose of her separate property by will. When the estate of the wife has been before marriage by a proper instrument secured to her sole use, with the power to dispose of it by will, she may undoubtedly exercise that power by a will made by her during her coverture. The authority to make such disposition of her estate does not arise under our statute of wills, but is the result of articles of agreement entered into by the parties before marriage.

In the present case, the parties in contemplation of marriage made certain articles of agreement as to the estate of Miss Ela, the female party, and as to her right to hold the same as a separate estate, and with full power in her to dispose of the same by deed or will. This instrument was under the hands and seals of the parties. The provisions are very broad, being in terms " that she shall have the full and absolute control over the said estate as if she had remained sole and unmarried, with full power to sell and dispose of the same by deed, devise or will, or otherwise." But the indenture was only between the two parties who were about to assume the relation of husband and wife, and did not introduce any third party as a trustee taking the legal title in the property, the subject of the antenuptial contract. This contract was executed in the state of New Hampshire, where the wife then resided. It was apparently in form a valid and legal antenuptial contract under the laws of New Hampshire. It is said, however, that a disposition by will would there require a sealed instrument. But the parties after marriage became residents of Massachusetts, and so continued until after the death of the wife. Upon looking at the antenuptial contract, we find that all the real estate to which it applies was situated in New Hampshire. As to that, if it has not been disposed of during the lifetime of the testatrix, the question may hereafter arise in the courts of New Hampshire We have considered the question as it arises upon the disposi

tion of her personal estate secured to her by the antenuptial contract, and which she continued to hold as her separate estate. As to real estate, it has been a controverted point, whether any antenuptial contract made solely by the parties, without the intervention of a trustee, could be effectual to clothe the wife with the power of disposing of the same by will. But as to this, the case of *Bradish* v. *Gibbs*, 3 Johns. Ch. 523, where the whole subject was very fully considered by Chancellor Kent, is a very strong authority to the point that it is not necessary that the legal estate should be vested in a trustee, and that a mere agreement entered into before marriage by a feme sole with her intended husband, by which he stipulates that she shall have power to dispose of her real estate by will, confers upon her the power so to do. Without expressing any opinion upon that point, it is sufficient in the present case to say that it would be so in respect to her personal estate. The authorities introduced in that case, and relied upon to sustain the objection as to real estate, fully concede that such contract between the parties, without the intervention of a trustee, was good and effectual as to her personal estate. Thus in *Hodsden* v. *Lloyd*, 2 Bro. C. C. 534, Lord Thurlow states the rule to be, that "with regard to chattels, both real and personal, the husband by contract anterior to the marriage, resting only in agreement, could authorize her to make a will ; but in order to enable her to make a will of real estate, he must part with the legal estate to trustees." In *Fettiplace* v. *Gorges*, 3 Bro. C. C. 8, taking the same distinction as to real estate, it is held that with regard to the personal property her disposition is good. That a will of this character, executed by a married woman, although operating rather as an appointment or disposal of property under an antenuptial contract, may be properly the subject of a decree of the court of probate allowing the same, has been too often sanctioned to be made the subject of further question. It was so held in *Osgood* v *Breed*, 12 Mass. 525, *Holman* v. *Perry*, 4 Met. 492, and *Heath* v. *Withington*, 6 Cush. 497. In the cases cited, the court held that where a power of appointment in writing reserved to a married woman is exercised by means

of an instrument purporting to be her last will, the same is to
be proved and allowed as a will by the court of probate.    These
cases also furnish a precedent for a decree in a case of this
character.    Adopting that form, we shall order the following
decree to be entered in the present case:

Ordered, that the instrument offered as the last will and tes-
tament of Susan S. Edwards be approved and allowed, and have
full force and effect so far as the same can operate in law or
equity upon any and all the property and rights of property of
said testatrix, subject to her disposal by way of appointment,
creation or declaration of trust, or otherwise, under or by virtue
of the antenuptial contract made and concluded on the 21st of
March 1854 between Thomas Edwards of the first part and
Susan S. Ela of the second part.              *Decree reversed.*