Brown v. Connell.

CASE 37—PETITION EQUITY—October 26.

## Brown v. Connell.

APPEAL FROM TRIMBLE CIRCUIT COURT.

FRAUDULENT CONVEYANCES.—Although a deed may be fraudulent as to creditors at the time of its execution, the grantee, after the lapse of ten years, will be treated as an innocent purchaser for value, and no equity can be asserted against him in favor of a subsequent purchaser upon the ground that the deed was actually fraudulent, or upon the ground that it was voluntary and the subsequent purchaser without actual notice of its existence.

Ten years after the execution of a deed which was originally fraudulent as to creditors, the grantor sold the land to one who, as a part of the purchase price, paid certain debts of the grantor. The right of the subsequent purchaser to the land having been denied by the court, he now asserts a lien for the amount paid by him upon the indebtedness of the grantor, upon the ground that he is entitled to be substituted to the rights of the creditors whose debts he paid. *Held*—That as the creditors of the grantor would have no rights against the land, there is nothing to which the purchaser can be substituted, even conceding that he is entitled to stand in the shoes of the creditors whose debts he paid.

MARC MUNDY FOR APPELLANT.

Appellant is entitled to be reimbursed for what he has spent in improving the land and in discharging encumbrances. (Bright v. Boyd, 1 Story's Rep., 478; s. c., 2 Story's Rep., 605.)

WM. CARROLL FOR APPELLEE.

The matter of appellant's counter-claim is *res adjudicata.* If the statute estopped appellant from attacking as fraudulent the deed under which appellee held, then no action or defense originating in that alleged fraud can be maintained.

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

John J. Connell derived from his father, Jesse Connell, a tract of land of about 283 acres. It was charged with the dower of his mother, Elizabeth Connell, in the estate of her husband.

December 29, 1864, John J. Connell, for the recited consideration of love and affection, conveyed it to his wife and four children, the appellee, W. E. Connell, being one of them. The grantor was at the time considerably in debt. Some judgments had been lately rendered against him, and executions issued thereon. It does not appear that all of his indebtedness had been sued upon, but certainly some of it had, and his creditors were pressing him for payment. He probably had no property outside of this land liable to execution. March 6, 1865, he mortgaged the land to one Calvert for one thousand three hundred and twenty-seven dollars and thirty-four cents, his wife joining in the mortgage. It was given, as it recites, "for cash paid by said Calvert for said John J. Connell on judgments, executions, &c., some of which was levied on the land herein conveyed. * * * It is the express understanding that this mortgage is to have precedence over a deed made by John J. Connell to his wife and children, bearing date 29th day of December, 1864, and recorded in the Trimble County Court Clerk's office."

In December, 1868, a portion of the land was sold

under an execution in favor of one Chalfant, his debt having been created prior to the conveyance by Connell to his wife and children. Thus matters stood, when, on August 19, 1875, Connell, by written agreement, sold the land to the appellant, Perry Brown, and conveyed it to him November 1, 1875, for the consideration of nine thousand and forty-one dollars. Both his mother and his wife and the three children, who were then of age, as well as Calvert and Chalfant, united in the deed. The appellee was then but twelve years old. The claim of Chalfant appears to have been transferred to Calvert, and the claim of the latter, at the time of the conveyance to Brown, amounted to three thousand two hundred and eighty dollars and seventy-eight cents. The appellant paid it out of the purchase money he had agreed to pay for the land, and it is evident that this indebtedness of Connell was in existence when he made the deed to his wife and children. The appellant certainly knew of this deed before the conveyance was made to him in November, 1875.

This action was brought by the appellee to recover his one-fifth interest in the land, and rents for the use thereof by the appellant. It was defended by the latter upon the ground that it was a voluntary conveyance, of which he had no notice when he purchased in August, 1875, and could not, therefore, affect him, as he was a purchaser for value; also, that it had, in fact, been made by John J. Connell to defeat his creditors, and being, therefore, fraudulent, it could not affect a subsequent purchaser for value, even if he had actual notice of its existence. The appellant also set

up the payment by him of John J. Connell's indebtedness out of the purchase money, and claimed that in case of a recovery of one-fifth of the land by the appellee, the latter should, upon the ground that he who seeks equity must do equity, be compelled to account for the one-fifth of the indebtedness so paid. The appellant also set up a claim for improvements made by him upon the land.

The lower court rendered a judgment for the appellee for one fifth of the land, and ordered its allotment to him. The appellant appealed to this court. It affirmed the judgment, holding, by the opinion to be found in 85 Kentucky, page 403, that while a conveyance which is actually fraudulent as to the grantor's creditors is void as to a subsequent purchaser for value without regard to any notice he may have, either actual or constructive, of its existence, and that one merely voluntary, and, therefore, only constructively fraudulent, is void as to such a purchaser, unless he has actual notice of its existence; yet the protection thus afforded is by the statute of limitation for a limited time only, and that after the lapse of ten years from the making of the conveyance, whether it be actually or only constructively fraudulent, the title of the grantee can not be assailed for such reason any more than if he had been an innocent purchaser for value. (Chapter 44, General Statutes, article 1, sections 1, 2, and chapter 71, article 4, section 6; Jones' Adm'r v. Jenkins, &c., 83 Ky., 391; Enders v. Williams, 1 Met., 346.)

Upon the return of the cause to the lower court a judgment was rendered, defining what portion of the

land the appellee should recover as his one-fifth, and allowing to the appellee a certain sum for rents, and to the appellant a certain amount for the permanent improvements made and taxes paid by him upon the land. The court refused, upon the motion of the appellant, to give him a lien upon the land for the one-fifth of the sum paid by him out of the purchase money upon the indebtedness of John J. Connell, and he has again appealed.

If this motion were sustained, it would practically reverse the former judgment of this court.

The questions, whether the conveyance by John J. Connell to his wife and children can be assailed by the appellant upon the ground that it was voluntary, and he had no actual notice of it when he purchased, or whether it was actually fraudulent, are *res adjudicata*. The security and stability of titles required that a time should be fixed by statute, after which they could not be questioned for fraud, no matter when it might be discovered. This time having elapsed in this instance before the appellant's right was questioned, he stood in the attitude, as this court decided, of an innocent purchaser. This being so, no equity affecting him can be supported upon the ground that the deed to him was either actually fraudulent or voluntary, and the appellant without actual notice of its existence when he purchased. The claim of the latter must at last rest upon the ground that the appellee does not occupy the position of an innocent purchaser, owing to the circumstances attending the execution of the deed to him. In short, that it was either fraudu-

lent or voluntary without actual notice of it upon the part of the appellant.

The appellee has done nothing to support the claim of the appellant to be substituted to the place of John J. Connell's creditors, whose debts were in existence at the making of the deed. He has been guilty of no fraud, and was not *sui juris* when the appellant voluntarily paid the indebtedness as a part of the purchase money for the land. Nor was he a party to the Calvert mortgage, and is not, therefore, bound by its recitals. Indeed, he was not then two years old. The appellant took no assignment of any lien by which any debt on John J. Connell was secured, and he can, in any event, occupy no better position than the general creditors of John J. Connell, and they could not, after the lapse of ten years from the making of the deed, have assailed it as either voluntary or fraudulent.

If, therefore, it be true, as urged, that the appellant is entitled to stand in the shoes of such a creditor, whose debt he paid, yet he is remediless, just as the creditor would be if his claim had never been paid, and he were now asserting it. If the appellant were substituted in his place, he could not look to the land, because the creditor could not do so; and as the statute of limitation estops the appellant from assailing the deed as fraudulent, equally is he estopped as to the assertion of any defense based upon that alleged fraud.

The appellant, no doubt, acted throughout in good faith, but his claim to relief is met by a statutory rule intended to give repose and secure stability of title, which must prevail both at law and in equity, however much the latter might delight, *ex aequo et bono*, to afford relief.

As to the question of the value of the rents and improvements, the testimony is conflicting, and it is sufficient to say that it supports the action of the lower court in adjusting them.

Judgment affirmed.