MARY FINUCANE *vs.* GEORGE A. FINUCANE & another.

Essex.    November 14, 1934. — January 4, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & LUMMUS, JJ.

*Will*, Execution, Validity.

At the hearing of a petition in a probate court for proof of an alleged will, there was evidence that the decedent at his home wrote out a paper, told another person that it was his will, allowed the other person to read it, and signed it in his presence; that the decedent and the other person thereupon went to the home of two persons; that the decedent there produced a paper, but did not say that it was his will or that the three were to sign as witnesses to his signature; that the other two thereupon read the paper; and that the three, at his request, in his presence and in the presence of one another, thereupon signed the paper, which was the one offered for probate. A decree in the proponent's favor was entered. *Held*, that

(1) Findings were warranted that the paper signed by the decedent at his home was the same as the one which the witnesses signed at the home of two of them; and that the witnesses understood that the paper which they were to sign was the decedent's will and that the signature which they were to witness was his;

(2) The instrument offered for probate complied fully with the requirements of G. L. (Ter. Ed.) c. 191, § 1, as to the execution of wills;

(3) The decree was proper.

PETITION, filed in the Probate Court for the county of Essex on December 29, 1933, for proof of the will of Fred D. Finucane, late of Methuen.

The petition was heard by *Dow*, J., by whose order a decree allowing the will was entered. Two of the respondents appealed. The evidence was reported. Material evidence is stated in the opinion.

*A. F. King, Jr.*, (*M. Nicholson* with him,) for the respondents.
*W. C. Tomlinson*, for the petitioner.

PIERCE, J.   These are appeals by George A. Finucane and Frances A. Charron, heirs at law of Fred D. Finucane, from a decree of the Probate Court admitting to probate the alleged will of Fred D. Finucane, who died at Methuen in the county of Essex, on December 18, 1933. The in-

strument was offered for probate by a sister of the decedent, no person being named as executor thereof. The only question presented is whether the instrument was executed in conformity with G. L. (Ter. Ed.) c. 191, § 1, which reads: "Every person of full age and sound mind may by his last will in writing, signed by him or by a person in his presence and by his express direction, and attested and subscribed in his presence by three or more competent witnesses, dispose of his property, real and personal . . . ."

The testimony reported in the record discloses the facts material to the issue to be that at some time in November, 1933, the decedent had a conversation with Paul R. Clay, an attorney at law, who had at various times acted as his attorney and legal adviser, and Finucane said "he wanted to know what to do to make a will"; that Mr. Clay asked him "if he wanted to try and do it himself," and Finucane said, "Yes, he just wanted to make a short will"; that Mr. Clay told him "to write down plainly what he had in mind, have it witnessed by three disinterested persons, that his signature or their signatures should be affixed in his presence and preferably in the presence of each other"; that on November 20, 1933, Finucane had a conversation with one Robinson during which the decedent told Robinson that "he had called up Mr. Clay to find out about making out a will"; that "he was going to make out this will and he wanted . . . [Robinson] to be a witness and sign it"; and he said "I've got to have three altogether sign it in the presence of each other and I want you to be a witness . . . who will I get for the other two"; that Robinson replied, "That's up to you, Fred. I don't want to tell you who to get"; that after some further talk, in reference to his relatives, Finucane went into the living room and "made this out" (referring to a paper which was exhibited at the hearing and bore the signature of Robinson), and "when he got through he handed it to . . . [Robinson] and said, 'What do you think of that?' "; that Robinson replied, "You are sure that's just the way you want it left, Fred," and Finucane said, "that's just how I want it"; that Finucane told Robinson the paper written by

him and read by Robinson was his will; that the paper was signed by Finucane in the presence of Robinson; that Finucane, earlier in the day of the making and signing of the paper by Finucane, had made an arrangement with Mrs. Littlejohn over the telephone for her and her daughter to sign a paper for him, and that he and Robinson went to the house of the Littlejohns in Methuen; that there the mother and daughter and Robinson, at the request of Finucane and in his presence, and in the presence of each other, signed a paper which Finucane took from his pocket; that Finucane did not say the paper they signed was his will or that they were signing the paper as witnesses to his signature; that he told the Littlejohns they could read the paper signed by him, which he produced, and they read and then signed it.

Upon the above facts it is the contention of the appellants that it is not conclusively shown that the paper signed by Finucane at his home, and there declared to be his will, was the paper produced at the home of the Littlejohns for their signatures; that when "Finucane produced the paper before the three subscribers in the Littlejohn home, and until he left there with the paper completed, no subscriber except Robinson knew the signature 'Fred D. Finucane' to be the signature of Fred D. Finucane. It was in no way alluded to or presented as such signature before any of the three subscribers at that gathering, and if an implication could be inferred as before Mrs. Littlejohn, it cannot be inferred as before her daughter, Alice Littlejohn"; that "If Fred D. Finucane intended to make known an intention to put his signature upon the paper in effect before the three subscribers, he failed to do so before each of the Littlejohns, and he failed properly to carry and proffer any such intention to each and all individuals of that gathering in the Littlejohn home, so that no such intention was put into the mind of each of the three subscribers then, and they respectively could not make a mental registration of that intent, or a mental attestation thereof, and they failed to become subscribing witnesses within the law, by subscribing after acknowledgment had failed, and attes-

tation likewise had failed, and such subscriber as so failed simply performed the mechanical act of writing down his name"; and that "Producing the paper in the Littlejohn home and asking the subscribers to sign this paper is not an acknowledgment of his signature by Fred D. Finucane."

It is plain that the evidence was ample to warrant the probate judge in finding as a fact that the paper signed by the Littlejohns and Robinson at the house of the Littlejohns was the same paper which was written and signed by Finucane at his home, in the presence of Robinson, and there declared to be his will. The paper produced at the Littlejohns' home by Finucane could have been understood by the subscribers to Finucane's signature to be an instrument purporting to dispose of property, not alone from its terms, which each of the witnesses read, but from the declaration of Finucane. The production of the instrument and the request that the Littlejohns should sign imported that the signature to be witnessed was Finucane's signature. Every requirement of G. L. (Ter. Ed.) c. 191, § 1, for the execution of wills was met, and the instrument was properly probated. *Leatherbee* v. *Leatherbee*, 247 Mass. 138. See *Hall* v. *Hall*, 17 Pick. 373; *Nickerson* v. *Buck*, 12 Cush. 332; *Ela* v. *Edwards*, 16 Gray, 91, 94, 95; *Dewey* v. *Dewey*, 1 Met. 349, 354; *Hammill* v. *Weeks*, 225 Mass. 245; *Nunn* v. *Ehlert*, 218 Mass. 471.

*Decree affirmed.*