CHIEF JUSTICE WILLIAMS
delivered the following opinion, in which JUDGE HARDIN conohrred:
W. F. Carder holding the equitable title, by the bond of H. Wallace and J. J. Carder, for a tract of land, sold it August 25, 1865, to Joshua Pack, in consideration of four thousand four hundred and sixty-seven dollars and seventy-five cents.
G. W. Nichols then being indebted to Pack in a like sum, it was agreed that he should execute his two notes to W. F. Carder for two thousand two hundred ;,and thirty-three dollars and eighty-seven and a half cents each, payable respectively December 25, 1865, and December 25, 1866, both of which recites their consideration as “ being for a tract of land this day bought by Joshua Pack from said Carder, and deeded by Wallace and Carder.”
The deed of Henry Wallace and J. J. Carder to Pack for the land was made the same day, and recites that it is made “ in consideration of the sum of four thousand four hundred and sixty-seven dollars and seventy-five cents, payable as follows: two thousand two hundred and thirty-three dollars and eighty-seven and a half cents to be paid on the 25th December next, at which time possession is to be given; the other half-two thousand two hundred and thirty-three dollars and eighty-seven and a half cents — to be paid on the 25th day of December, 1866, for which two payments George W. Nichols has this day executed his notes of even date herewith, payable to W. F. Carder.'1'1
Carder assigned the second note to Wallace, who, by due diligence, prosecuted Nichols to insolvency, and then recovered it of his assignee, W. F. Carder.
Nichols remained good for nearly a year after the first note was due, and then became insolvent; but Carder took no legal steps to have this debt collected.
*123 Carder filed one suit in his own name and one in the name of himself, Wallace, and J. J. Carder, to enforce a lien upon the land; and, in the original petition, asserted a lien by virtue of the terms of the deed; but to make his claim stronger, by amended petitions he asserted that it was expressly contracted that he should have a lien for the purchase price to be paid by Nichols, and that the draftsman was instructed to so draw the deed by both parties; and if it was not so done, it had been left out by mistake; he prays for an enforcement of his lien, &c. Pack denies every essential allegation as to this lien and mistake.
N. H. Jeffers, the draftsman of the deed, states, that “ the parties were all present, either at the time of writing the deed, or reading and signing of the same, and it was the understanding between all the parties that there was a lien on the land for the purchase money, the notes for the purchase money being executed by G. W. Nichols, and the deed made to Joshua Pack.”
Not a single witness in the case pretends to contradict this statement of the draftsman. It is true, that Nichols says “ he thinks he was present when the deed was signed and acknowledged, and that he has no recollection that there was any lien reserved on the land, or anything said about a lien that day, or at any other time; that he was rather forgetful sometimes, but had no recollection of such conversation about the sale and lien. He also says that Pack and Carder came to him, and he thinks Carder said that he had sold his farm to Pack, “provided I could make the payments to suit; I then asked what payments he wished, and told him, at the same time, that I owed Pack money; that I would give him my individual notes, payable in two payments, as set out in the deed, which I did execute and deliver to Mr. Carder.” Also, in a previous *124 conversation, that Carder said that Pack and himself had-been trying to trade for several days, but he would not sell the land to him unless “ I would give my notes in payment.”
B. Crook states he was present at the circuit court clerk’s office when Jeffers wrote the deed, and when it was executed by Wallace and Carder to Pack, and don't recollect that Nichols was there, but does recollect that the interested parties — that is, the Carders, Wallace, Pack, and Jeffers — were there, and says the deed was read over and then signed, and no objections were made to it.
This is all the evidence as to what occurred upon that day. One witness states a previous and one a subsequent conversation, but these at best only remotely indicate something inconsistent with a reserved lien. The evidence, instead of establishing that Carder desired to extend time to Nichols, proves that he was unwilling to sell, even by getting Nichols’ notes, unless he could make the payments satisfactory, and even then he desired to retain a lien. The very careful recitals of this deed, that the consideration was “payable'' not that it was paid in Nichols’ two notes, “to be paid" at given dates, and for specified sums, and dated of “even dale herewith," together with the pregnant fact that both notes recite that they are for the consideration price “of land bought by Joshua Pack from TV. F. Carder and deed by "Wallace and Carder," connected with the positive statement of the draftsman, “ that it was the understanding between all the parties that there was a lien upon the land for the purchase money, the notes being executed by Nichols and the deed made to Pack, establishes, beyond all doubt, that it was agreed and understood that Carder -retained a lien upon the land sold and conveyed. This is a suit be *125 tween the original parties, unencumbered with any equity of a third and innocent party.
It is then a question involving two inquiries:
1. Was it a statutory waiver?
2. Was it a common law waiver of the vendor’s lien?
Section 26, chapter 80, Revised Statutes (2 Stanton, 230), énacted that “ where any real estate shall be hereafter conveyed, and the purchase money or any part thereof shall remain unpaid, at the time''of the conveyance, the grantor shall not thereby have a lien, unless it be expressly stated in the deed what part of the consideration remains unpaid.” It will be observed that this statute does not require that the purchase money should be payable by the vendee; it only requires that the deed should state what part remains unpaid, no matter by whom. Does this deed so specify ? Could language be more appropriate or explicit to specify the unpaid purchase price, when and in what sums it was “ to be paid ?” It is the statement of the unpaid purhase price which retains the lien by failing to waive it; and had the words for which a lien is reserved been added, it would only have been evidence of the contract, and could not of itself have created a lien, for the statute makes no provision that such words shall at all be necessary. But if the direct and plain letter of the statute has been complied with according to the natural import of the language, and then to that be superadded the parol proof of a clear and explicit understanding that a lien was reserved, would it be anything but an arbitrary, and, at least, a doubtful construction, to say the statute disallows the lien because they were the notes of a third party, instead of the vendee, which constituted the unpaid consideration ?
As the unpaid consideration was stated in the very language of the statute, it cannot be a statutory waiver. *126 Then, what is the rule of equity, independent of the statute, on this subject.
It is well stated by the Supreme Court of California, in Baum vs. Grigsby (21 Cal., 172), “when any other independent security is taken, as a mortgage on the land, or upon other property, or the personal responsibility of a third person, the lien is held to be waived, unless there is at the time án express agreement for its retention. The taking of a distinct, independent security, is presumptive evidence of waiver.”
The Supreme Court of Minnesota, in Daughaday vs. Paine et al. (6 Min., 450), states the rule almost identically as follows: “ That whenever the vendor shall take any security for the purchase money upon land sold, or upon any other land, or by pledge of chattels, or by the ■ absolute or conditional obligation of a third person, or any other security than the personal obligation of the vendee, such fact shall be deemed conclusive of his intention to abandon his' equitable lien, unless he retain it by express agreement
And the Supreme Court of Texas, in Hutchison and wife vs. Patrick (22 Tex. R., 318), held, that, where the wife was the vendee, and the husband became personally responsible with her on the notes for the purchase price, and a lien was reserved in the deed, that this evidence of a retained lien rebutted the presumption of a waiver from the husband’s becoming surety.
Story, in his Equity Jurisprudence, section 1224, says: “ Generally speaking, the lien of the vendor exists, and the burden of proof is on the purchaser to establish that, in the particular case, it has been intentionally displaced, or waived by the consent of the parties. If, under all the circumstances it remains in doubt, then the lien attaches.”
*127 Again (section 1226) he says : “ The taking of a security for the payment of the purchase money is not, of itself, as it was in the Roman law, a positive waiver or extinguishment of the lien. * * * But the taking a security has been deemed, at most, as no more than a presumption, under some circumstances, of an intentional waiver of the lien, and not as conclusive of the waiver. And if a security has been taken for the money, the burden of the proof has been adjudged to lie on the vendee to show that the vendor agreed to rest on that security, and to discharge the lien. Nay, even the taking of a distinct and independent security, as, for instance, of a mortgage on another estate, or of a pledge of other property, has been deemed not to be conclusive evidence that the lien is waived. ■ The taking of bills of exchange drawn on and accepted by a third person, or by the purchaser and a third person, has also been deemed not to be a waiver of the lien, but to be merely a mode of payment.”
And such may be regarded as the settled American law, as recognized in this State, which makes the reception of another security or the taking a third person’s note but presumptive evidence at best of a waiver of the lien.
The only object of the Revised Statute was to declare the conveyance of the title, without specifying the unpaid purchase price, a conclusive waiver of the lien, but made no other modification of the law regulating the vendor’s lien. This statute does not create the lien. It was not designed for any such purpose. Its object was to declare the conclusive waiver of a lien by a conveyance, without specifying the unpaid purchase price ; but when the unpaid purchase price is set out, whether this be owing by the vendee or another, we must look to the law, as existing before and outside of this statute, to see whether it has or not been waived by some other act of the parties.
*128 The ancient rule, that an answer in chancery could not be overthrown, except by the evidence of two witnesses, or one witness with strong corroborating circumstances, was changed by section 142, Civil Code, and which has been so expounded by this court in Albro vs. Lawson (17 B. Mon., 644), and Enders vs. Williams (1 Met., 354-5). The verification of each party to their pleadings now being reg-arded as equivalents, the issue is to be tried upon the evidence, as in ordinary actions at law.
The vendee has not only failed to make out the waiver of lien by the vendor in this case, but the latter has shown its existence by the positive evidence of one witness, which is strongly corroborated by both the recitals of the deed and the notes. And this court is asked to say that the lien has been waived, without the authority of the statute against the equitable rules long recognized as the law in such cases, and in utter disregard of all the evidence establishing the positive intention of the parties to preserve and retain a lien.
If this statute is to have such a constructive effect, it will prove to be one of the most delusive and disastrous laws ever enacted, as it will legislate vendors, in many instances, out of their intended liens, and out of their lands, as it is believed the general construction placed upon it by the country at large is, that if the unpaid purchase price is set out in a deed, whether this be owing by the-vendee or some other, that this preserves the lien, and that many such transactions have been entered into.
Upon the language of the statute alone, unaided by any extrinsic proof, the construction must be doubtful, as is attested by the equal division of this court; but when the judgment of the lower court allowing the lien is sustained by the extrinsic evidence establishing a posi *129 five intention to preserve a lien, the case becomes doubly formidable.
But as Nichols remained good for nearly a year after the first note fell due, and Carder took no steps to collect it, and as Pack still had an interest in its collection, so that the lien upon his land ought to be so far released, and as he would be injured to that extent by Carder’s own conduct and laches, it would be unjust to allow Carder now to assert a lien for that note. Had Pack taken Nichols’ note to himself and assigned it to Carder, this conduct would have released him, and his equity is quite as strong as if he h.ad assigned the note. No such objection, however, exists as to the second note. Nichols was, with due diligence, prosecuted to insolvency upon it, and Carder should be allowed a lien therefor.
As the pleadings of both parties, the deed and notes and parol evidence, show that W. F. Carder was the holder of the equitable title and the real vendor, and that J. J. Carder and Wallace were the holders of the legal title, having sold to him, and that Nichols’ notes were, by arrangement between him and Pack, made payable to him, how he can be called or adjudged as a stranger to the transaction or conveyance, is past my legal comprehension.
Judge Hardin concurs with the Chief Justice in this opinion. It results, therefore, that the judgment can only be reversed as to the note first due, and must be affirmed as to the other.