CHIEF, JUSTICE PRYOR
delivered the opinion on the court.
The appelleee Cummins being the owner of a lot situated on Second Street, in the city of Louisville, sold and conveyed it to. one L. B. Redd for the sum of $7,000, for which he took his three notes, payable in one, two, and three years, retaining a lien in the deed to secure the payment. Subsequently he purchased of the appellant Green a house and lot on the cor *176 ner of Third and Chestnut streets for $30,000, and, as a part of the unpaid purchase-money, assigned to Green the notes on Redd. Green made to the appellee a deed to this lot, and retained a lien for the notes unpaid, including the notes assigned to him on Redd. The first of the Redd notes was promptly paid, but when the remaining notes matured, Redd, failing to pay, the present action in equity was instituted by the appellant to enforce the lien on the house and lot sold by the appellee to Redd, and by an amended pleading he sought to enforce the lien for any deficit that might appear on the house and lot conveyed by him to Cummins. Cummins answered, denying the right of the appellant to enforce his lien for the second note, alleging that as assignor he was released from all liability by reason of the failure of the appellant as assignee to use the proper diligence in its collection, and that tjie lien was retained to secure this liability and no other.
It is conceded that he had lost all recourse on the' appellee as assignor of the second note, but it is insisted this laches was no waiver of the lien, and that no action at law was necessary to perfect the right of the appellant to enforce it. The equitable rule is that a vendor retains his lien unless he shall have done something to abandon it, and his failure to proceed at law is no defense to a proceeding in equity to enforce it; and if this doctrine is to be applied to the case before us, the court below erred in refusing to subject the Chestnut - street property to the payment of the note. In determining this question it is proper to inquire as to the nature and extent of the liability on the part of the- appellee by reason of the assignment and the lien reserved in the deed made to him by the appellant. The note assigned was the personal obligation of Redd to pay the money, and to secure it a lien was retained on the Second-street lot conveyed by the appellee to Redd, and as an additional security the *177 appellee, by his assignment, assumed to pay the debt in the event the appellant, after the exercise of proper diligence, failed to collect it from the obligor. The liability of the appellee as assignor was alone intended to be secured by the lien retained in the deed to the property conveyed to him by appellant. The latter had accepted the three notes from the appellee, with his assignment, as a part payment of the $30,000, and could not have resorted to a court of law to make the appellee personally liable, or to a court of equity to enforce the lien upon the lot sold him without first prosecuting the obligor to insolvency..
It is true, the holder of an assigned note executed for land, and for which a lien is retained, will not be deprived of his lien by reason of his failure to sue at law, and have a return of no property found; and, in this case, although Redd was not prosecuted to insolvency, the lien upon the Second-street property conveyed to him, and for which the notes were executed, still exists. The right to enforce the lien in such a case is not made to depend on the continuance of the personal liability of the assignor. In this case, however, we construe the deed to appellee, as far as it applies to the assigned notes, as creating in effect a lien to secure the liability of the appellee as assignor only; and if, when the assigned notes matured, the appellant had undertaken, without pursuing his remedy for the collection of the notes against Redd, to have subjected appellee’s lot to their payment, the chancellor would have at once dismissed his petition. The undertaking, on the part of the appellant, when he accepted the notes, with the appellee’s assignment, as a partial payment of the $30,000, was, that he would pursue the proper legal and equitable remedies against the obligor in order to collect them; and when these remedies had been exhausted, and the debt was still unsatisfied, the appellee became liable for any deficit. The appellant had no right to retain the notes in his pocket until the insolv *178 ency of Redd, and then insist that his lien is not affected by such laches.
If it is to be determined that there is no personal liability of the appellee to pay the debt, and that no judgment at law can be obtained against him, and yet his house and lot may be sold to pay the notes, it is not only in violation of the plain intention of the parties, but of the undertaking, on the part of the appellant, that he could collect this note and apply the proceeds in part satisfaction of the appellee’s indebtedness. He had already accepted it as a payment in the event he could collect the same from Redd, and it was incumbent on him to use all the diligence required of an assignee to make the money.
At and after the maturity of this note the obligee Redd, as the proof shows, was the owner of real estate unencumbered of the value of $3,000 or $4,000, and the property sold him by the appellee had declined but little in value. When this action was instituted Redd had become insolvent, and the house and lot purchased by him have lessened so much in value that the two remaining notes can not be satisfied out of the proceeds of sale. The appellant with all the laches on his part still maintains that he had Redd personally liable for the debt with a lien on the Second-street property to secure its payment; and that the appellee is personally liable as assignor, and the house and lot sold him is still in lien for its payment, although his personal liability as assignor no longer exists. Such is not the legal effect of the agreement between the parties or the deed made to appellee. The lien on appellee’s lot existed only so long as he remained personally liable on his assignment, the lien depending on the diligence exercised by the appellant in collecting the note. When the personal liability was gone the lien no longer existed. Such we think was the plain undertaking of the parties. The case of Pack v. Carder, 4 Bush, 121, sustains this view of the question presented. In that case it was distinctly held that the holder of a note taken *179 in part payment for the land must use due diligence to collect it, in order to preserve his lien (if any retained) as against the party making the payment by the assignment of the note. The appellee in this case, so far as this record shows, is not personally liable for this second note, nor can the house and lot sold him be subjected to its payment. The chancellor erred, however, in adjudging that the proceeds, of the Redd house and lot, should be applied first to the payment of the last note. The record presents no case for the marshaling of assets or determining the priority of liens. The appellant has the right to subject the Redd property to the payment of both notes, and when this is done the question, as to the liability of the assignor Cummins to him, arises. There is nothing in the record showing any personal liability of Cummins, and both notes being liens on the property the proceeds should be paid over to Green, axid when the liability of Cummins as assignor is attempted to be enforced on the last note, the questions of diligence and the equitable and legal rights of the parties can be determined. We do not mean to say that the facts of this case are not analogous to the case of Coleman v. Tully’s administrator, 7 Bush, or that the chancellor has erred in his conclusion if the facts authorized a decision of that question. This point must remain undecided until a proper case is presented.
Judgment reversed, and cause remanded for further proceedings consistent with this opinion.