ELENOR M. NUNN vs. ABIGAIL M. EHLERT.

Middlesex.    January 26, 1914. — September 10, 1914.

Present: RUGG, C. J., LORING, SHELDON, DE COURCY, & CROSBY, JJ.

*Will*, Attestation.  *Witness*, Attestation of will.

Under R. L. c. 135, § 1, a will is not attested lawfully by a subscribing witness, if the person who intended and attempted to execute the instrument as his will concealed his signature from the subscribing witness so that he could not see it or know that it was there.

LORING, J.  This appeal from a decree of the Probate Court comes before us upon a report by a single justice of this court * which sets forth all the evidence introduced before him.  The single justice found that the testimony of each subscribing witness was "entirely credible and not open to doubt," and made a finding that the instrument was properly executed and that it ought to be admitted to probate as the will of Thomas Nunn. By the terms of the report, if the finding was wrong the decree of the Probate Court (disallowing the will) is to be affirmed. But, if the finding is sustained, that decree is to be reversed and a decree entered admitting the instrument to probate.

A facsimile of the will is made part of the report.  The will was written on ordinary foolscap paper, that is to say, on paper folded at the top and with lines ruled upon it.  The whole paper is in the handwriting of the deceased.  A copy of the ending of it is set forth in the footnote.†  The *in testimonium* clause begins at the foot of the first page and ends on the second line of the

---

* *Braley*, J.

† "In testimony whereof I hereunto set my hand and in the presence of three witnesses declare this to be my last will and testament, this first day of March A.D. 1908 Thomas Nunn of Malden in the said Commonwealth.

"On this first day of March 1908.  Thomas Nunn of Malden in said Commonwealth, sign the foregoing instrument in our presence, declaring it to be his last will, and as witnesses thereof we three at his request and in his presence hereto subscribe our names:

Signed.   Thomas Nunn

Mrs. Mary E. Marshall.
John Marshall.
Thomas G. Andrews .                                        Thomas Nunn."

second page. The attestation clause begins on the next line and fills five lines and a part of the sixth line. On the next line below and on the right hand side of that line occur the words "Signed. Thomas Nunn." On the three lines next below that line and on the left hand side of those lines are the names, "Mrs. Mary E. Marshall, John Marshall, Thomas G. Andrews." On the same line with "Thomas G. Andrews" and on the right hand side of that line are the words "Thomas Nunn."

According to Mrs. Marshall's testimony it appeared that a few days before she and her husband signed the instrument here in question the deceased had asked her if she and her husband would sign his will; that later on, he came into their kitchen and took the will out of his pocket; that "it was folded up;" that as he turned it over she saw handwriting on it and recognized the writing as the writing of the deceased, but could not "recognize any word;" that they were sitting on opposite sides of a table, and the deceased "reached" the folded paper across to her and she signed; that he held on to the paper while she signed; that it was folded "just so I could sign comfortably," and so that she saw nothing above where she put her name. She saw no signature below the edge made by the folding of the paper. She further testified that she then got up out of the chair in which she sat while signing her name; that her husband sat down and signed his name, and that the deceased held on to the paper folded as above described until both had signed. He then blotted the signatures, put the paper in his pocket and went away. She further testified that when she caught sight of the writing while the paper was being turned over she did not distinguish any words or see any signature. This testimony was corroborated by that of her husband. He was explicit in his testimony that no change was made in the arrangement of the paper while his wife and he signed, and that the deceased did not point to any signature in the will. In his testimony he said, "I don't remember of seeing any signature." It should be added that after his death the instrument now presented as the will of the deceased was found in his box in a safety deposit vault.

This case, therefore, presents the question whether a will is duly attested when the signature of the deceased is hidden from the witnesses when they attest and subscribe the will.

Our statute of wills (in substance a re-enactment of the statute of frauds, St. 29 Car. II, c. 3, § 5,*) is in these words: "Every person of full age and sound mind may by his last will in writing, signed by him or by a person in his presence and by his express direction, and attested and subscribed in his presence by three or more competent witnesses, dispose of his property, real and personal," with some additions not necessary to be stated. R. L. c. 135, § 1.

In *Chase* v. *Kittredge*, 11 Allen, 49, 63, a statement was made of the meaning of the word "attested" in what is now R. L. c. 135, § 1. The decision in *Chase* v. *Kittredge* was that a subscribing witness cannot sign before the testator has signed. In making that decision Mr. Justice Gray delivered an exhaustive opinion upon the acts required by statute to make a valid will. In the course of that opinion he said: "The statute not only requires them (the witnesses) to attest, but to subscribe. It is not sufficient for the witnesses to be called upon to witness the testator's signature, or to stand by while he makes or acknowledges it, and be prepared to testify afterwards to his sanity and due execution of the instrument, but they must subscribe. This subscription is the evidence of their previous attestation, and to preserve the proof of that attestation in case of their death or absence when after the testator's death the will shall be presented for probate. It is as difficult to see how they can subscribe in proof of their attestation before they have attested, as it is to see how they can attest before the signature of the testator has made it his written will." Chief Justice Robertson gave a similar definition of the word "attest" in *Swift* v. *Wiley*, 1 B. Mon. 114, 117. He said: "To attest the publication of a paper as a last will, and to subscribe to that paper the names of the witnesses, are very different things, and are required for obviously distinct and

---

*St. 29 Car. II, c. 3, § 5, is as follows: "From and after the said four and twentieth day of June all devises and bequests of any lands or tenements, devisable either by force of the Statute of Wills, or by this statute, or by force of the custom of Kent, or the custom of any borough, or any other particular custom, shall be in writing, and signed by the party so devising the same, or by some other person in his presence and by his express directions, and shall be attested and subscribed in the presence of the said devisor by three or four credible witnesses, or else they shall be utterly void and of none effect."

different ends. Attestation is the act of the senses, subscription is the act of the hand; the one is mental, the other mechanical, and to attest a will is to know that it was published as such, and to certify the facts required to constitute an actual and legal publication: but to subscribe a paper published as a will, is only to write on the same paper the names of the witnesses, for the sole purpose of identification." See in this connection *Reed* v. *Watson,* 27 Ind. 443, 447; *Gerrish* v. *Nason,* 22 Maine, 438, 441; *Brooks* v. *Barrett,* 7 Pick. 94, 98.

If, however, the matter were *res integra,* the conclusion reached in the cases cited above would be the conclusion which would have to be reached by a due construction of the statute of wills. R. L. c. 135, § 1. The statute requires that the deceased shall be a person of full age and sound mind, that his will shall be reduced to writing, and that the writing shall be signed by him (or by a person in his presence and by his express direction), and that it shall be "attested and subscribed in his presence by three or more competent witnesses." The subscription of the paper by the witnesses identifies the instrument. What then does the statute mean when it requires in addition that the instrument shall be "attested" by the witnesses? To attest means to bear witness. When the statute requires that the witnesses shall attest, what is it that they are to bear witness to? Plainly to those facts to which they have to testify when put on the stand as attesting witnesses, namely, that those things existed and were done which the statute requires must exist and be done to make the writing a valid will. The rule that the will must be proved by the attesting witnesses, if they can be produced (as to which see *Chase* v. *Lincoln,* 3 Mass. 236; *O'Connell* v. *Dow,* 182 Mass. 541), is founded on this assumption. In *Chase* v. *Lincoln, ubi supra,* this court said at page 237: "The Legislature, in requiring three subscribing witnesses to a will, did not contemplate the mere formality of signing their names. An idiot might do this. These witnesses are placed round the testator to ascertain and judge of his capacity, and the heir has a right to insist on the testimony of all the three witnesses, to be given to the jury. They must therefore all be produced, if living, and under the power of the court."

Taken literally, R. L. c. 135, § 1, requires that the instrument

in writing shall be "signed" by the deceased (or by a person in his presence and by his express direction), in the presence of the witnesses. But as matter of construction it was early established that an acknowledgment by the deceased in the presence of the witnesses of a previous signature was equivalent to signing the instrument in their presence. Chief Justice Shaw, in his charge to the jury in *Hall* v. *Hall,* set forth in 17 Pick. 373, 375 (and quoted in full on this point later on in this opinion), made a statement in substance to that effect. In *Dewey* v. *Dewey,* 1 Met. 349, 352, Mr. Justice Dewey said: "The term 'attested,' as used in the statute, does not import that it is requisite that the witnesses should see the very act of signing by the testator. The acknowledgment by the testator, that the name signed to the instrument is his, accompanied with a request that the person should attest as a witness, is clearly sufficient." Gray, J., in *Chase* v. *Kittredge, ubi supra,* said: "The statute requires that the will shall 'be in writing and signed by the testator,' and shall be 'attested and subscribed, in the presence of the testator, by three or more competent witnesses.' He is not required to write his signature in their presence, but it is his will which they are to attest and subscribe. It must be his will in writing, though he need not declare it to be such. It must therefore be signed by him before it can be attested by the witnesses. He must either sign in their presence, or acknowledge his signature to them, before they can attest it." And the law is settled to the same effect in other jurisdictions. A collection of cases may be found in a note in 38 L. R. A. (N. S.) 164.

It may be taken to be settled, therefore, first, that the attestation required by R. L. c. 135, § 1, consists in the witnesses seeing that those things exist and are done which the statute requires must exist or be done to make the written instrument in law the will of the deceased; second, that although the act required by R. L. c. 135, § 1, is that the will shall be "signed" by the deceased, yet as matter of construction an acknowledgment by the deceased of a previous signature, made in the presence of the attesting witnesses, is equivalent to signing in their presence.

With these two propositions established we come to the question presented in the case at bar, namely: Is there an acknowledgment by the deceased of a previous signature where the signa-

ture at the time is hidden from the witnesses? Chief Justice Shaw put that (the case of a hidden signature) as an example of an instance where without question there was not an acknowledgment by the deceased of his signature. In his charge to the jury, set forth in *Hall* v. *Hall*, 17 Pick. 373, 375, already referred to, he said: "That to maintain the issue on the part of the executor, and to establish the will, it was necessary to prove that the testatrix signed the will in presence of the witnesses; or that she acknowledged the signature as hers in their presence; and that they severally signed it as witnesses in her presence; and that such acknowledgment was a sufficient compliance with the statute. But in the latter case such acknowledgment may be shown, either by proof of an express acknowledgment and declaration that the signature to the will is hers, or by such facts as will satisfy the jury, that she intended to make such declaration or recognition of her signature. If a mere reference is made to a paper, especially if produced by another person, and not held in her own custody, or if it is folded up, and there is no pointing to or referring to the signature, if she publishes, declares and acknowledges such document to be her will, this is not such an acknowledgment of the signature as will supersede the necessity of an actual signature in the presence of the witnesses, and will not warrant the jury in finding that it was duly signed in the presence of the witnesses." And the law is settled in accordance with this view in England (*Hudson* v. *Parker*, 1 Rob. (Eccl.) 14; *Blake* v. *Blake*, 7 P. D. 102); in New York (*In re Will of Mackay*, 110 N. Y. 611; *In re Laudy*, 148 N. Y. 403); in Minnesota (*Tobin* v. *Haack*, 79 Minn. 101); and in Oregon (*Richardson* v. *Orth*, 40 Ore. 252). An opposite conclusion was reached in *In re Dougherty's estate*, 168 Mich. 281.

Apart from authority it is manifest that a person does not acknowledge a signature to be his where no signature can be seen. All that he does in such a case is to acknowledge the fact that he has signed. While an acknowledgment of a signature then exhibited to the witnesses is equivalent to signing in their presence, an acknowledgment to the witnesses of the fact that a signature has been made is not the equivalent of signing in their presence. It follows that where the signature is hidden there is not the equivalent of the statutory requirement that

the writing shall be "signed" in the presence of the attesting
witnesses.

.It is true that *Hudson* v. *Parker*, 1 Rob. (Eccl.) 14, and *Blake* v.
*Blake*, 7 P. D. 102, were decided under St. 1 Vict. c. 26, § 9, *
which in terms requires that the signature shall be "made or
acknowledged by the testator in the presence of two or more
witnesses." But it is of no consequence whether the conclusion
(that the signature must be made by the testator in the presence
of the witnesses or acknowledged by him in their presence) is
reached as matter of construction (as in R. L. c. 135, § 1) or
as matter of express enactment (as it is under 1 Vict. c. 26, § 9).
The conclusion, however reached, being the same, cases in both
jurisdictions are equally in point.

It is the contention of the proponent that however this ques-
tion might have been decided if the matter had been *res integra,*
the point is concluded by the case of *Dewey* v. *Dewey*, 1 Met.
349. It will be necessary to examine that case with some par-
ticularity. The instrument propounded in that case as the will of
the deceased (Timothy Dewey by name) was subscribed by
Medad Fowler, Josiah Fowler and Silas Root as witnesses. There
was no question as to the sufficiency of the attestation on the
part of Silas Root. The question presented in that case was that
of the sufficiency of the attestation by Medad and Josiah Fowler.
Medad Fowler testified that his name, which was upon the will,
"appeared to be his handwriting, but that he had 'no recollec-
tion anything about it.'" His son, Josiah Fowler, testified that
the deceased asked him and his father to sign a paper which he
called his will, "and not to read it." He "thought he did not see
. . . Timothy sign it; but the deponent and his father signed it
as witnesses, without reading it. Deponent did not recollect
seeing a word of writing on the paper, which he 'thought,' at
the time, was not right, or as it should be.'" At the trial, after

---

* St. 1 Vict. c. 26, § 9, is as follows: "And be it further enacted, That no
will shall be valid unless it shall be in writing and executed in manner herein-
after mentioned; (that is to say,) it shall be signed at the foot or end thereof
by the testator, or by some other person in his presence and by his direction;
and such signature shall be made or acknowledged by the testator in the
presence of two or more witnesses present at the same time, and such witnesses
shall attest and shall subscribe the will in the presence of the testator, but
no form of attestation shall be necessary."

the testimony of the subscribing witnesses had been given, the case was taken from the jury and by agreement of the parties was left to the determination of the full court. The opinion begins in these words: "The only question raised in this case is whether this will was duly attested," and ends with these: "It seems to us, upon the whole evidence, that the will was duly signed by the testator, and being thus signed, he by his acts, if not by his declarations, sufficiently recognized and acknowledged his own execution of it to authorize the three witnesses to attest and subscribe the same as witnesses thereto, in accordance with the provisions of the statute."

There was no suggestion that the signature of the deceased was hidden from Médad and Josiah Fowler when they subscribed the will as witnesses. The case at bar, therefore, is not concluded by the decision made in *Dewey* v. *Dewey*. Not only is that true, but there is nothing in the opinion which is decisive of this case. When Mr. Justice Dewey said that the deceased "by his acts, if not by his declarations, sufficiently recognized and acknowledged his own execution of" the will, he must be taken to have meant that the deceased, by his acts, if not by his declarations, sufficiently recognized and acknowledged the previous signature made by him. In an earlier part of his opinion Mr. Justice Dewey had said: "The term 'attested,' as used in the statute, does not import that it is requisite that the witnesses should see the very act of signing by the testator. The acknowledgment by the testator, that the name signed to the instrument is his, accompanied with a request that the person should attest as a witness, is clearly sufficient. *Stonehouse* v. *Evelyn*, 3. P. Wms. 252, 254. *Grayson* v. *Atkinson*, 2 Ves. Sen. 454, 456. So a declaration by a testator, before the witnesses, that the paper is his will, is sufficient to authorize their attestation to it, and to make it a good will." A declaration by the testator that a paper bearing his signature then exhibited to the witnesses is his will is a sufficient acknowledgment of the signature to authorize the attestation of the will. That was the case to which Mr. Justice Dewey's statement was addressed. Whether such a declaration will be sufficient if the signature was hidden from the witnesses was not before the court in *Dewey* v. *Dewey;* and what was said there cannot be taken to have been said with reference to such a case.

There is one point on which the decision in *Dewey* v. *Dewey* is not clear, and that is the view which the court should be held to have taken with respect to the testimony of Josiah Fowler. Josiah Fowler did not testify that he did not see the signature of the deceased when he and his father signed as subscribing witnesses. What he did testify to was that he "did not recollect seeing a word of writing on the paper." The distinction is plain. As Mr. Justice Dewey said on pages 353 and 354: "The question is not whether this witness [he was then speaking of Medad Fowler] now recollects the circumstance of the attestation, and can state it as a matter within his memory. . . . The real question is, whether the witness did in fact properly attest it [the will]." It is what was done in fact which is to be looked to in determining whether the attestation is good or not. Testimony of a witness given at the time that the instrument is offered for probate that he does not recollect that a certain act was done, is a different thing from testimony that that act was not done. In *Dewey* v. *Dewey* the full court were finding the facts as well as ruling upon the law. Whether they intended to find that, although Josiah Fowler did not recollect seeing the signature of the deceased, that signature was seen by him and his father, Medad Fowler, or whether the full court meant to find that the signature was not in fact seen by either of them, is not clear. Of these two it is not necessary to determine which is to be taken to have been the view of the court in *Dewey* v. *Dewey*. Whichever is the true view of that opinion it is not decisive of the question which has to be decided here. The court could have found that Medad and Josiah saw the signature of the deceased but did not recollect that fact when they testified; or, if they found that Medad and Josiah did not see it, there is authority for the proposition that where the testator exhibits his signature to the witnesses and asks them to subscribe their names as witnesses the attestation is valid because he has in fact acknowledged his signature to those witnesses, even though the witnesses did not in fact see it. In such a case he has exhibited his signature to them, and that, coupled with a request that they should sign as witnesses, is an acknowledgment of his signature. In such a case it is not necessary that the signature exhibited to them by the testator should have been seen by the witnesses. That was the ground on which

*Blake* v. *Blake,* 7 P. D. 102, was decided by the Court of Appeals in 1882. It was there said that it is enough that the signature which was acknowledged could have been seen by the witnesses. That is vital. Whether it was in fact seen by them is not a matter which is decisive.

Cases like *Ela* v. *Edwards,* 16 Gray, 91, where it is held that a will can be allowed on proof of the authenticity of the signatures of the deceased and of the attesting witnesses when these witnesses are all dead or for any other reason cannot be produced, do not conflict with the conclusion reached by us in the case at bar. These are not cases holding that the ultimate fact to be proved is not a signing by the deceased or the acknowledgment by him of a previous signature then exhibited to the witnesses. They are cases deciding how that fact may be proved when the attesting witnesses are dead, or for other reasons cannot testify; and they decide that in such cases the ultimate fact to be proved may be proved by circumstantial evidence aided by the doctrine "*omnia rite esse acta praesumuntur.*"

Another case relied upon by the proponent is *Meads* v. *Earle,* 205 Mass. 553. That case came before this court upon a report from which it appeared that the instrument propounded as her will was written by the deceased (who was a school teacher) without advice. It was not signed in the usual place between the attestation clause and the *in testimonium* clause, but the single justice found as a fact that the deceased, when she wrote her name at the head of the blank, intended that to be her signature to the will. It was also found by the single justice that the deceased "by words and conduct acknowledged and declared the will before the subscribing witnesses and that the subscribing witnesses signed the attestation clause in her presence at her request and upon her acknowledgment and declaration that it was her will, although neither of them saw her signature." In the opinion of the court in that case it was said: "The will was therefore properly signed. *Lemayne* v. *Stanley,* 3 Lev. 1. And the signature was properly attested. *Dewey* v. *Dewey,* 1 Met. 349, and cases cited. *Adams* v. *Field,* 21 Vt. 256." Nothing further was said as to the validity of the attestation. Whether there was or was not a valid attestation of that will does not seem to have been an issue which was tried before the single justice, and it is certain,

from an examination of the brief presented by the contestant to the full court, that no question on that point was made here. The only objection to the will made by the contestant in his argument before the full court was to the finding of the single justice that when the deceased wrote her name at the head of the will she intended that to be her signature to the will. No other attack upon the validity of the execution of the will was made before this court.

The proponent also has relied upon *Gould* v. *Chicago Theological Seminary,* 189 Ill. 282. That was a case where the attestation was held valid although the previous signature of the deceased was hidden from the subscribing witnesses when the deceased asked them to sign, saying that the paper was his will. But the Illinois act (Ill. Rev. Sts. c. 148, § 2) does not provide that the testator shall acknowledge a previous signature. The Illinois act provides that the attesting witnesses must declare on oath "that they were present and saw the testator or testatrix sign said will, testament or codicil, in their presence, or acknowledged the same to be his or her act and deed." It was held as matter of construction of that statute that what is to be acknowledged by the deceased is that the paper signed by the subscribing witnesses is his will.

It is hard to understand what the attestation of a will consists in if the contention of the proponent is right. The subscription of the witnesses identifies the paper. But the statute in requiring that the will must be "attested" means that something more must be done than the identification of the paper by the subscribing of the witnesses. It cannot be that the requirement that the will should be "attested" means that the testator shall inform the witnesses that the paper is his will. The contrary is settled law, at least in this Commonwealth. *Hogan* v. *Grosvenor,* 10 Met. 54. *Osborn* v. *Cook,* 11 Cush. 532. *Tilden* v. *Tilden,* 13 Gray, 110. If the subscribing witnesses need not know that the paper subscribed by them is the will of the deceased it is hard to understand what is required by the word "attested" in addition to the word "subscribed," if the definition of "attested" given in *Chase* v. *Kittredge* and the other cases cited above is not correct. On this point the argument of the proponent has given us no aid.

It follows that when the deceased hides from the subscribing witnesses the signature which is upon the instrument previously signed by him and goes no further than to ask the subscribing witnesses to sign the paper placed before them, even if that request be accompanied by a statement that the paper is his will, there is no acknowledgment by the deceased of his signature and so no valid attestation of his signature by the subscribing witnesses. All that is acknowledged by the deceased in that case is that the paper is his will. In such a case there is no acknowledgment by the deceased that the signature on the paper (if there be a signature upon it) is his signature. We are of opinion that the charge of Chief Justice Shaw in *Hall* v. *Hall,* 17 Pick. 373, set forth above, and the decisions made in *Hudson* v. *Parker,* 1 Rob. (Eccl.) 14, *Blake* v. *Blake,* 7 P. D. 102, *In re Will of Mackay,* 110 N. Y. 611, *In re Laudy,* 148 N. Y. 403, *Tobin* v. *Haack,* 79 Minn. 101, and *Richardson* v. *Orth,* 49 Ore. 252, are correct. It follows that there was no valid attestation of the will of Thomas Nunn in the case at bar.

It is undoubtedly the fact that Thomas Nunn thought that he had made his will, and it is a matter of regret, under these circumstances, to have to come to the conclusion that the paper which he signed, thinking that it was his will, is not in law his will. But that regret arises in every case in which a deceased person has failed to comply with those requirements, which, as a matter of public policy, the Legislature has thought proper to exact in case a person wishes to dispose of his property by will. The Legislature might have provided (as it has been held that the Legislature of Illinois did provide) that if the paper was signed by the deceased it would be enough if he acknowledged it to be his will in the presence of the persons who signed the paper as witnesses. But that is not the provision which was adopted in R. L. c. 135, § 1, and the earlier acts of which this is the re-enactment.

It follows that by the terms of the report the decree of the Probate Court must be affirmed. It is

*So ordered.*

*F. T. Hammond,* for the appellee.

*F. O. White & R. W. Nason,* for the appellant.