ESTHER G. FLYNN *vs.* FRANK E. PRINDEVILLE & another.

Suffolk.    February 5, 1951. — April 3, 1951.

Present: QUA, C.J., LUMMUS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Will,* Validity, Execution.    *Undue Influence.    Unsound Mind.    Probate
Court,* Jury issues.

Expected evidence showing merely that an elderly woman was weak,
feeble and afflicted with a chronic arterial condition when she executed
her will, and that she may have been eccentric according to ordinary
standards, did not require the granting of a motion for the framing of
a jury issue as to her soundness of mind at such time.

Expected evidence that a family substantially benefited by the will of an
elderly woman concealed from two first cousins of hers, who were her
heirs but for many years had not seen her or known where she lived,
the fact that she was living with the family, which she did for more
than two years before she executed her will, and that one member of
the family intended that the cousins should not see her, showed no
more than an opportunity for the family to exercise influence over her
and did not require the granting of a motion for the framing of a jury
issue as to whether the execution of the will was procured by undue
influence of the members of the family.

It was error for a judge of probate to deny a motion for a jury issue as to
the due execution of an alleged will where a statement of expected
evidence by counsel for the contestants, although contradicted in
part by a statement of expected evidence by counsel for the proponent,
showed that while the three witnesses to the will were alone with the
alleged testatrix "she did nothing and said nothing," that one of
them, an attorney, "produced some papers which he arranged so that
the only part of the papers that was open was the space" for the
witnesses' signatures, that the other two witnesses signed, that "noth-
ing was said by anyone about whose will it was," that if the attorney
signed the will "he did not do so in the presence of the other witnesses,"
and that the other witnesses "did not see the . . . [alleged testa-
trix's] signature" nor "see her sign the paper."

PETITION, filed in the Probate Court for the county of
Suffolk on January 4, 1950, for proof of the will of Rose J.
Kelley, late of Boston.

A motion for jury issues was heard by *Mahoney,* J.

*A. R. Sisson, (W. J. Lee* with him,) for the contestants.

*T. J. Kelly, (W. B. Sullivan, Jr.,* with him,) for the proponent.

WILLIAMS, J. In the matter of the petition for probate of the will of Rose J. Kelley, who died in Boston on December 29, 1949, the contestants of the will have appealed from an order of the Probate Court denying their motion to frame the following issues for a jury: "1. Was the instrument purporting to be the last will of Rose J. Kelley of said Boston, dated July 25, 1944, executed according to law? 2. Was the said Rose J. Kelley at the time of the execution of the said alleged will of sound mind? 3. Was the execution of said alleged will of said Rose J. Kelley, procured by the fraud or undue influence of Esther G. Flynn, Joseph G. Flynn, Rita M. Flynn or Irene T. Flynn or any of them, exercised upon the said Rose J. Kelley?" The proponent of the will is Esther G. Flynn, who was named in the will as executrix. She is a sister of the contestants Robert T. and Frank E. Prindeville, all three being first cousins of the decedent and her only heirs at law and next of kin. The motion was heard on statements by counsel of expected evidence. It is our duty to review the case as stated, giving the decision of the probate judge the weight to which it is entitled in the light of the whole record. *LeBlanc* v. *Coombes,* 325 Mass. 431, 432.

From the statements of counsel for the contestants it appears that the decedent at the time of her death was about eighty-five years of age. She had never married and since 1922, when a brother with whom she had made her home died, had been a recluse living until 1929 or 1930 in the attic of a house left to her by her brother, and thereafter until March 2, 1942, in single rooms on Worcester Street and Rutland Square. During this period she rarely left her room except to make necessary purchases and to go to one or more banks in which she had substantial deposits. Her neighbors, with whom she never associated, regarded her as queer and eccentric. She failed to keep herself personally clean and to provide herself adequately with nourishing food. On March 2, 1942, she collapsed and was taken to the Carney

Hospital where she was found to be suffering from malnutrition, vitamin A deficiency, and arteriosclerosis. She was discharged from the hospital on June 2, 1942, improved. Thereafter she lived with the proponent Esther G. Flynn, occupying a room in the house owned by Mrs. Flynn and her husband on Lorraine Street. On July 25, 1944, and within a few hours after the execution of the will now being contested, she again went to the hospital and was found to be suffering from arteriosclerosis and fibroid phthisis of the lungs. She continued to live in the home of the Flynns until her death in 1949. On March 3, 1942, apparently while in the hospital, she had executed a previous will in which she bequeathed $5,000 to Mrs. Flynn, $1,000 to her then attorney John F. McDonald, and the residue to seven well known charities. In her present will, dated July 25, 1944, she bequeathed $10,000 to Esther G. Flynn and $1,500 in equal amounts of $500 to Joseph G. Flynn, the husband of Esther, and to the Flynn children, Rita M. Flynn and Irene T. Flynn. The residue of her estate was left to nine charities, several of which had also been named in the 1942 will. At the time the decedent first went to the hospital she had savings accounts of approximately $30,000.

We are of opinion that there was no error in the refusal to frame a jury issue as to the sound mind of the decedent. While she may have been eccentric according to ordinary standards and was afflicted with a chronic arterial condition, it is not shown that she was not fully capable of handling her own affairs at the time she made her will. Except that she was weak and feeble, nothing is offered to show lack of mental capacity then or during the remaining five years of her life. *Johnson* v. *Talbot,* 255 Mass. 155. *Union Trust Co.* v. *Magenis,* 259 Mass. 409. *Taylor* v. *Callahan,* 265 Mass. 582. *Smith* v. *Patterson,* 286 Mass. 356. *Mitchell* v. *McLaughlin,* 310 Mass. 41.

There was also no error in refusing to frame the issue as to undue influence exercised by members of the Flynn family. It was stated that previous to July 25, 1944, the contestants for many years had not seen the decedent or

known where she lived, and that after she went to live in the home of Esther G. Flynn the fact that she was living there was concealed from the Prindevilles by the Flynns. The expected evidence showed that Mrs. Flynn intended that her brothers should not see the decedent but went no farther than to show an opportunity for the Flynns to exercise an influence over her. Mere suspicion, surmise or conjecture is not enough to warrant a finding of undue influence. *Neill* v. *Brackett,* 234 Mass. 367, 370. *Foley* v. *Philbrook,* 300 Mass. 418, 425. Compare *Duggan* v. *Rennick,* 322 Mass. 425.

As to the issue relating to the lawful execution of the will, counsel for the contestants stated that he expected testimony to prove that the will was executed between three and four o'clock in the afternoon of July 25, 1944; that Frank J. Broderick, a realtor, and Harold F. McCarthy, the owner of a gasoline station, were requested by Mrs. Flynn to come to the Flynn home to witness a will; that on their arrival they went upstairs to a second floor bedroom and saw lying in bed a "very old lady who looked very ill"; that "she was lying very quietly with her eyes open but she did nothing and said nothing while Messrs. Broderick and McCarthy were there. . . . Mrs. Flynn introduced them as the men who were there to witness the will. . . . The lawyer [William B. Sullivan] produced some papers which he arranged so that the only part of the papers that was open was the space in which he asked Messrs. Broderick and McCarthy to sign their names. . . . Mr. Broderick signed first and Mr. McCarthy second. Nothing was said by anyone about whose will it was, and if Mr. Sullivan also signed the will or paper he did not do so in the presence of the other witnesses. The old lady in bed didn't say anything during the time Messrs. Broderick and McCarthy were there, that they did not see the old lady's signature; that they did not see her sign the paper; that she did not say anything about having signed the paper, and that the papers were held so the only space for the signature of witnesses was open." Counsel for the proponent stated that the wit-

nesses above mentioned "went out there, it was a hot afternoon and the will was read to Miss Rose Kelley by the attorney, Mr. Sullivan, and she agreed to the terms and was satisfied, and during the course of events the witnesses were there, the witnesses and Mr. Sullivan, and she signed in the bed and your Honor has before you that will with that signature." If the decedent did not sign or acknowledge her signature on the will in the presence of the witnesses, the will was not properly executed. See G. L. (Ter. Ed.) c. 191, § 1; *Nunn* v. *Ehlert*, 218 Mass. 471; *LeBlanc* v. *Coombes*, 325 Mass. 431; *Laws* v. *Aschenbeck*, 326 Mass. 7.

It appears that only four persons were present in the room at the time of the alleged execution of the will. Evidence of such execution, therefore, would be expected to come from the testimony of one or more of these persons. Counsel did not state from what witness or witnesses this testimony was expected to be produced. If counsel had knowledge that one or more of these persons would testify in accordance with the statements made, the naming of such person or persons would have tended to convince the judge of the accuracy of the statements. See *Laws* v. *Aschenbeck*, 326 Mass. 7. In the absence of specification the judge might have doubted the availability of the evidence. It does not appear, however, that there was any cross-examination of counsel in reference to the expected evidence or that any suggestion or demand was made that witnesses be named or called. See *Fuller* v. *Sylvia*, 240 Mass. 49, 53; *Cook* v. *Mosher*, 243 Mass. 149, 153; *Barr* v. *Warren*, 299 Mass. 60, 63. The judge seems to have accepted the statements as made without further questioning. Although on appeal the element of his exercise of discretion must be given weight, *Hannon* v. *Gorman*, 296 Mass. 437, 438, in our opinion the stated evidence was of such a character that the denial of the motion to frame this issue was error.

The order of the Probate Court should be modified by allowing the motion so far as it pertains to the framing for submission to a jury of the first issue, and as so modified is affirmed.

*So ordered.*