BEVERLY WERBER & another[1] *vs.* MAX G. WERBER & another.[2] No. 03-P-1037. December 6, 2004. *Will,* Allowance, Execution, Undue influence, Validity, Witness to will.

This case involves a dispute between the children of Helen B. Werber regarding the probate of her will. Helen's sons, Max and Eben Werber, the primary beneficiaries under the will, were the proponents of the will; her daughters, Beverly Werber and Sharon Belsky, who were largely written out of the will, contested it. The trial judge allowed the proponents' petition to probate the will and the contestants appeal.

1. The daughters originally objected that their mother lacked testamentary capacity and that the disposition of her assets was swayed by undue influence on the part of Max and Eben. They claimed the will did not accurately reflect Helen's true intent. The judge's clear and specific findings on these issues were amply supported by the record and we do not disturb them. The judge concluded: "The evidence clearly established that Helen, for reasons which were important to her, did not provide for her daughters in her will except as to tangible personal property and that her estate plan was not the product of undue influence, mistake, lack of understanding of the contents of her will, or lack of capacity." Applying "careful scrutiny" (due to the intimate relationship between the testator and her sons), the judge found that the disposition of Helen's estate "accurately expresse[d] her intention to provide for her two sons" and to largely disinherit her daughters. The judge's detailed findings demonstrate that Helen's volition was not overpowered and dominated by Max or Eben as described in *Neill* v. *Brackett,* 234 Mass. 367, 369-370 (1920), and that the will expressed precisely her wishes as she explained them to her brother and his wife. See *Heinrich* v. *Silvernail,* 23 Mass. App. Ct. 218, 228 (1986).

2. The contestants also claim that the proponents of the will failed to satisfy their burden of proving its proper execution pursuant to G. L. c. 191, § 1. See, e.g., *Tarricone* v. *Cummings,* 340 Mass. 758, 761 (1960). Specifically, they argue the failure to prove that Helen signed the document in the presence of at least two competent witnesses and that those witnesses, in turn, signed in her presence.

At trial, attorney Carl Baylis, who prepared the will, testified that the document executed was identical to the last draft approved by Helen, that she reviewed the will to assure herself that it conformed with her intent, and that she then signed it in his presence and in the presence of his two secretaries. Baylis acted as one of the two witnesses required by statute; one of his secretaries, Christine Kraska, was the second witness. See G. L. c. 191, § 1. The other secretary, Elizabeth Walker, a notary public, notarized the will. At trial, the contestants requested that Kraska and Walker also be called in to testify as to proper execution; the judge stated that the law did not so require and that Baylis's testimony was sufficient.

A long line of cases stemming from *Chase* v. *Lincoln,* 3 Mass. 236 (1807), establishes the right of heirs contesting the probate of a will to insist on the testimony of all attesting witnesses. See, e.g., *Finer* v. *Steuer,* 255 Mass. 611, 615-616 (1926); *Goodwin* v. *Riordan,* 333 Mass. 317, 318 (1955); *Gordon* v.

---

[1]Sharon Belsky.
[2]Eben C. Werber.

*Levy,* 362 Mass. 866, 866 (1972). As Baylis's signature is uncontested, Kraska is the only witness in question. Kraska, however, as a witness outside the jurisdiction (she had since moved to Florida) need not have been called, so long as her signature was proved genuine in some other way. *Goodwin* v. *Riordan, supra* at 318, citing *Ela* v. *Edwards,* 16 Gray 91 (1860). Baylis's testimony, describing the reason that he and the two secretaries met with Helen, his general description of each of the four signing in accordance with their prescribed roles, and the apparent regularity of the document and its conformity with his testimony all warranted an inference of the genuineness of Kraska's signature, as did the notarization of the document. The attestation clause to which the signature attached,[3] although not required, was also persuasive evidence of proper execution. Cf. *Ela* v. *Edwards,* 16 Gray at 95-97. There was no evidence or suggestion of fraud.

It follows that the failure to call the secretaries to testify offered no impediment to the probate of the will.

The proponents' request for an award of attorney's fees and costs is denied.

*Decree affirmed.*

*Hanson S. Reynolds* for the plaintiffs.

*Christine M. Santoro* for Max G. Werber.

*Seymour Weinstein (Barbara S. Liftman* with him) for Eben C. Werber.


---

[3]The attestation clause provided: "We, the undersigned witnesses, each do hereby declare in the presence of the aforesaid Testatrix that the Testatrix signed and executed this instrument as her Last Will in the presence of each of us, that she signed it willingly, that each of us hereby signs this Will as witness in the presence of the Testatrix, and that to the best of our knowledge the Testatrix is eighteen (18) years of age or over, of sound mind, and under no constraint or undue influence."

