RITA FARRELL & others[1] *vs.* ALICE L. McDONNELL
& another,[2] coexecutors.[3]

No. 11-P-589.

Middlesex. December 1, 2011. - May 11, 2012.

Present: BERRY, TRAINOR, & HANLON, JJ.

*Will,* Validity, Execution, Witness to will.

A judge of the Probate and Family Court, in disallowing a will, erred in
concluding that the decedent's will had not been properly executed, where,
although the two witnesses to the will did not see the decedent sign her
name, an inference properly could be drawn, based on all the circumstances
surrounding the execution of the will, that the decedent indirectly
acknowledged to the witnesses that the signature on the will was hers.
[728-731]

PETITION for probate of a will filed in the Middlesex Division
of the Probate and Family Court Department on September 12,
2007.

The case was heard by *Edward F. Donnelly, Jr.,* J.

*Harold N. Robertson* for the defendants.

*Wayne A. Perkins* for the plaintiffs.

HANLON, J. Alice L. McDonnell and John C. Turner, coexecu-
tors of the estate of Helen M. Kendall (collectively, coexecu-
tors), appeal from a decree of the Probate and Family Court
disallowing Kendall's will on the ground that it was not properly
executed.

*Background.* The facts are not disputed. On March 18, 2006,
Kendall went with the coexecutors to the Citizens Bank in the
Davis Square section of Somerville, intending to execute (and

---

[1] Thomas R. Powers and Diana Powers, coexecutors of the estate of Elizabeth
Farrell.

[2] John C. Turner.

[3] Of the estate of Helen M. Kendall.

have notarized) Kendall's will. When they arrived, Turner approached Deborah Lindstedt, a banker and a notary public employed by Citizens Bank, and asked for assistance. In response, Lindstedt approached Kendall, asked her for identification, and "chatted with [her] for a little bit." Turner handed the will to Lindstedt and then walked off to the side.

Lindstedt could not recall any of the circumstances surrounding the execution of Kendall's will. However, Lindstedt testified in detail about the practice that she regularly followed when notarizing a will. The judge credited her testimony and found that she followed her regular procedure in this case. See Mass. G. Evid. § 406(a) (2011). It was Lindstedt's practice to verify a testatrix's identity and to have her read aloud the attestation or notarization clause appearing before the signature line.[4] After reading that clause aloud, the testatrix would sign the will, and Kendall did so. Lindstedt then would sign in the notary block. Afterwards, she would call two additional witnesses, in this case, two bank tellers, Susanna Rosa and Guercy Carrie, one at a time, to come from the teller windows to her desk to witness the will in the testatrix's presence. At trial, Lindstedt confirmed that her signature and notary seal appeared on the last page of Kendall's will.[5] In addition, her notary log showed that she notarized a last will and testament, along with a power of attorney, for Kendall on March 18, 2006; the log also showed that Kendall provided her Massachusetts identification card to verify her identity.

Although neither of the two witnesses had a specific memory of the event, each also testified as to his, or her, usual practice. The judge found that, after Kendall signed the will in the presence of Lindstedt, "the witnesses were . . . called to [her] desk and requested to affix their signatures to the document. The wit-

---

[4]The notarization clause here includes the following language: "Before me, the undersigned authority, on this day Personally appeared the Testatrix and the witnesses whose names Are signed to the foregoing instrument, and, all of these persons being by me duly sworn; the Testatrix declared to me and to the witnesses in my presence that the instrument is her last will and that she . . . willingly signed, and that she executed it as her free and voluntary act for the purposes therein expressed; and each of the witnesses stated to me, in the presence of the Testatrix that she signed the will as witness and that to the best Of her knowledge the Testatrix was eighteen years of age or over, of sound mind and under no constraint or undue influence."

[5]Lindstedt did not read the will.

nesses did not have any conversation with Ms. Kendall nor did they see Ms. Kendall sign the will." In addition, Rosa and Carrie confirmed the appearance of their signatures on the last page of the will.

Carrie testified that he followed the same practice "regardless of the [type of] document" he witnessed. It was his regular practice to look at the first page to verify that the name of the signatory was the person seated at the banker's desk; he also would review any form of identification that had been provided. Rosa testified that when she witnessed a document, her regular practice was to look at the form of identification provided by the signatory and confirm that the name was consistent with the signature and "matched the person sitting at the desk." She sometimes would engage in conversation with the signatory if she (Rosa) was not busy or rushed.

Kendall died on August 14, 2007, at the age of ninety. The coexecutors filed their petition to probate the will on September 12, 2007, and Rita Farrell, Thomas R. Powers, and Diana Powers (collectively, contestants)[6] filed an affidavit of objections to the appointment. The judge bifurcated the trial, addressing first the issue whether the will was properly executed; he reserved other issues raised by the objections, including, specifically, undue influence and lack of testamentary capacity. In a decision dated March 19, 2010, the judge found, "With no conversation having taken place between Ms. Kendall and the witnesses, there was no explicit acknowledgment of the signature as hers nor was there a formal statement that the document was her will." Recognizing that "there are cases wherein testators did not specifically acknowledge their previously affixed signatures to after signing witnesses," the judge distinguished those cases on the ground that "in those cases the implied acknowledgment was the testator's request that the witness sign the will. Here, Ms. Kendall did not make the request, Ms. Lindstedt did." The judge concluded that Kendall did not "explicitly or impliedly acknowledge her signature on the will and that, as a result, the will was not properly

---

[6]At the time of her death, Kendall was survived by her two sisters, Rita Farrell and Elizabeth Farrell. Elizabeth Farrell died shortly after Kendall, on September 29, 2007, and Thomas R. Powers and Diana Powers are the coexecutors of her will.

executed." The coexecutors' petition to probate the will was dismissed with prejudice, and they filed a timely appeal.

*Discussion.* The coexecutors do not quarrel with the facts found by the judge; they challenge only his conclusion that the will was not properly executed. "It is our obligation to review the evidence and reach a decision in accordance with our own reasoning and understanding, giving due weight to the findings of the trial judge, which we will not reverse unless they are plainly wrong, and finding for ourselves any additional facts we believe to be justified by the evidence." *Heinrich* v. *Silvernail,* 23 Mass. App. Ct. 218, 223 (1986), quoting from *Olsson* v. *Waite,* 373 Mass. 517, 520 (1977).

The governing statute provides, "Every person eighteen years of age or older and of sound mind may by his last will in writing, signed by him . . . and by his express direction, and attested and subscribed in his presence by two or more competent witnesses, dispose of his property." G. L. c. 191, § 1, as amended through St. 1976, c. 515, § 3.[7] "The burden of proving proper execution rest[s] upon the proponent and require[s] her to prove that all the formal requirements of the statute were met. . . . A presumption of proper execution is inferred upon proof of all the signatures . . . even though the living witnesses can recollect nothing of the circumstances." *Goodwin* v. *Riordan,* 333 Mass. 317, 318 (1955).

The parties dispute the significance of that presumption; in the coexecutors' view, the judge failed to explain why the presumption did not apply. The contestants respond that the facts found by the judge rebut the presumption of proper execution. The question for us is whether the procedure followed was sufficient for the proper execution of the will or, more specifically, whether, on these facts, an inference properly can be drawn that Kendall acknowledged, even indirectly, to the witnesses that the signature on the will was hers.

First, there is no question regarding any of the signatures themselves. The judge accepted Lindstedt's testimony that Kendall signed the will in her presence after reading aloud the attestation clause. Each of the witnesses, including Lindstedt, confirmed her

---

[7]Repealed by St. 2008, c. 521, § 10, effective March 31, 2012.

(or his) respective signature; the signatures appeared below the attestation clause on the last page of the will. We note that an attestation clause to which a signature is attached, "although not required, [is] . . . persuasive evidence of proper execution." *Werber* v. *Werber*, 62 Mass. App. Ct. 927, 928 (2004).

Second, although the two witnesses did not see Kendall sign the will, it is not necessary that the additional witnesses observe the "testator sign his name, or in express terms declare the signature to be his." *Ela* v. *Edwards*, 16 Gray 91, 92 (1860). Kendall's signature appeared in plain view directly above the place where the witnesses signed on the last page of the will; there is no allegation that any attempt was made to conceal her signature. See *Barber* v. *Henderson*, 304 Mass. 3, 5 (1939). In *Barber*, the court stated that "facts essential to a good attestation were present" and the provisions of the statute are met even if a witness does "not see the signing of the will by the testatrix." *Id.* at 4.

The third, and crucial, question is whether Kendall acknowledged, even implicitly, that the signature on the will was hers. The judge's conclusion that she did not "explicitly or impliedly acknowledge her signature" is based on his finding that the witnesses did "not have any conversation with Kendall nor did they see Ms. Kendall sign the will." For support, he cited *Flynn* v. *Prindeville*, 327 Mass. 266 (1951). However, the facts in this case are distinguishable from those in *Flynn*, where counsel's representations about anticipated testimony were that witnesses had been asked to come to a home and then were taken into a room where they:

> "saw lying in bed a 'very old lady who looked very ill'; that 'she was lying very quietly with her eyes open but she did nothing and said nothing while [the witnesses] were there. . . . The lawyer . . . produced some papers which he arranged so that the only part of the papers that was open was the space in which he asked [the witnesses] to sign their names. . . . Nothing was said by anyone about whose will it was, and if [the lawyer] also signed the will or paper he did not do so in the presence of the other witnesses.' "

*Id.* at 269. This case is very different.

Although it is a close question, based on all the circumstances surrounding the execution of the will, we are persuaded that Kendall implicitly acknowledged her desire to execute her will by being present when the will was given to Lindstedt, reciting the attestation clause aloud to her, and then signing the will in her presence. Lindstedt then carried out Kendall's "declaration" to execute her will in accordance with the statute by obtaining two additional witnesses. The fact that it was Lindstedt's request to the witnesses to attest to Kendall's signature, rather than Kendall's, does not obviate Kendall's implicit acknowledgment. Thereafter, Kendall sufficiently acknowledged her signature by remaining seated at Lindstedt's desk and watching, without interruption, as each witness came individually to the desk to sign the will. Kendall's actions, following as they did upon her reading the attestation clause, signing the will, and being present while Lindstedt notarized it, indicate that Kendall was acknowledging the presentment of her will to the witnesses for execution consistent with her original request to Lindstedt. An acknowledgment by the testatrix to witnesses of "a previous signature [is] equivalent to signing the instrument in their presence." *Nunn* v. *Ehlert*, 218 Mass. 471, 475 (1914). See *Nickerson* v. *Buck*, 12 Cush. 332, 342 (1853) ("[T]he actual signature by the testator may be made known to the witness in other modes than an express declaration to the witness that the will is his. Any act or declaration that carries by implication an averment of such fact is equally effectual"); *Ela* v. *Edwards*, 16 Gray at 92-93 ("The signature of the testator may be made known to the witnesses in other modes than an express declaration to them by the testator that the signature is his. Any act or declaration that carries by implication an averment of such fact is equally effectual").

Although our cases previously have not addressed precisely these facts in the context of determining whether a will was properly executed, language in the decisions of other State courts lends support for our conclusion that the testatrix's implied acknowledgment to the witnesses here was sufficient, and that the judge erred in dismissing the coexecutors' petition for probate on the ground that the will was not properly executed.[8]

---

[8]See, e.g., *Wheat* v. *Wheat*, 156 Conn. 575, 583 (1968) (similar statute

The decree disallowing the will based on improper execution is reversed. We remand for further proceedings on the issues reserved by the probate judge.

*So ordered.*

---

"lacks any requirement that the testator subscribe the will in the presence of any of the attesting witnesses . . . or even that he acknowledge his signature to them"); *Humphrey* v. *Wallace,* 169 Kan. 58, 61 (1950) ("The act of acknowledgment may be established by any words indicative of acknowledgment or by conscious acts or conduct of the testator from which an acknowledgment may be implied"); *In re Will of Priddy,* 171 N.C. App. 395, 401 (2005) ("A testator 'need not formally request the witness to attest his will as the request may be implied from his acts and from the circumstances attending the execution of the will.' *In re Will of Kelly,* 206 N.C. 551, 553 . . . (1934) [citations omitted]. '[A] request will be implied from the testator's asking that the witness be summoned to attest the will, or by his acquiescence in a request by another that the will be signed by the witness.' *Id.* [citations omitted]"); *In re Wood's Will,* 67 N.E.2d 11, 13 (Ohio Prob. Ct. 1945) (if "an attesting witness to a will did not see the testator subscribe his name[,] . . . if by signs, motions, conduct, or attending circumstances, the attesting witness is given to understand by the testator that he had already subscribed the paper as his will, it is a sufficient acknowledgment").