NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporters@sjc.state.ma.us

19-P-1210                                    Appeals Court

IN THE MATTER OF THE ESTATE OF JOHN J. KING.

No. 19-P-1210.

Middlesex.      May 11, 2020. - September 2, 2020.

Present: Meade, Rubin, & Henry, JJ.

Will, Validity, Execution. Evidence, Handwriting exemplar, Expert opinion. Witness, Expert. Probate Court, Judicial discretion.

Petition filed in the Middlesex Division of the Probate and Family Court Department on November 17, 2017.

The case was heard by Melanie J. Gargas, J.

David T. Fulmer for John J. King, Jr.
Dana Alan Curhan for Paul M. King & another.

MEADE, J.  The petitioner, John J. King, Jr. (John), son of the deceased testator, John J. King (testator), appeals from the decree entered by a judge of the Probate and Family Court dismissing his petition to formally probate the proposed will of

the testator and to appoint John[1] as personal representative of the testator's estate.  On appeal, he claims that the judge denied him a fair and impartial hearing on his petition by improperly restricting the evidence he could present to prove proper execution of the testator's will.[2]  We agree and reverse the decree.

Background.  The testator died on August 2, 2017.  On November 17, 2017, the testator's daughter, Robin E. Pelletier, filed a petition for formal adjudication of intestacy and for her appointment as personal representative of the testator's estate (Robin's petition).  On December 11, 2017, claiming there existed a will executed by the testator on September 3, 2013 (will), John filed a petition for formal probate of the will and for his appointment as personal representative of the testator's estate (John's petition).

---

[1] Because some of the parties share the same surname, we will refer to the parties by their first names for ease of reference.

[2] John also claims on appeal that the judge abused her discretion by denying his motion to recuse.  However, he did not file a timely notice of appeal from the denial of his motion for recusal, thus the issue is not properly before us.  See DeLucia v. Kfoury, 93 Mass. App. Ct. 166, 170 (2018) ("A timely notice of appeal is a jurisdictional prerequisite to our authority to consider any matter on appeal").  See also Mass. R. A. P. 4 (a) (1), as appearing in 481 Mass. 1606 (2019).  In addition, John appeals from the June 12, 2019, denial of his motion to stay.  However, he does not address that issue in his brief, so we consider the issue waived.  See Barkan v. Zoning Bd. of Appeals of Truro, 95 Mass. App. Ct. 378, 389 (2019).

The proposed will bequeathed John the entire estate, and nominated him as the "executor" of the testator's estate; in the event John predeceased the testator, the entire estate was bequeathed to the testator's brother, Francis R. King, Jr.  A provision of the will intentionally omitted Robin and Paul M. King, the testator's other son, from receiving any benefit from the estate.  The testator's signature was witnessed by three individuals, all of whom, according to the evidence, were acquaintances of the testator (and deceased at the time of John's petition), and lived in the same neighborhood where the testator had owned a home (on Sidney Street in Lawrence) since 1968, and where the testator had previously lived for several years.  The signatures were not notarized, and there was no self-proving affidavit included with the will.  At the time of the will execution, John lived at the Sidney Street property, which was still owned by the testator.

In December 2017, John filed an appearance and objection to Robin's petition; in his January 2018 affidavit of objections, John specifically objected to Robin's appointment as personal representative of the testator's estate.[3]  In January 2018,

---

[3] In his affidavit of objections, John detailed the animosity between his family members occurring after his parents' divorce in 2008.  John claimed, and it appears undisputed, that neither Robin nor Paul had a good relationship with the testator after the divorce; John claimed he remained neutral for a period of time after the divorce, but eventually

Robin, Paul, and Elisa King (the testator's former wife, and the mother of Robin, Paul, and John) separately filed their appearances and objections to John's petition. In their respective affidavits of objections, they each objected to John's appointment as personal representative of the testator's estate, and asserted that the proposed will was invalid based on improper execution, forgery, and undue influence; in March 2018, John moved to strike the objections to his petition made by Robin, Paul, and Elisa.[4]

In June 2018, a special personal representative was appointed for the estate. At a September 27, 2018, pretrial conference, the judge allowed the motion of Robin and Paul to bifurcate the issue of the validity of the will.[5] At the pretrial conference held on January 23, 2019, John made an offer of proof of extrinsic evidence (which included numerous samples of the testator's and attesting witnesses' signatures) for the

---

became estranged from his mother, Robin, and Paul. He also referenced in his affidavit the restraining orders obtained by Robin against the testator in New Hampshire (where she lived at the time) from 2009 through 2013; she also obtained in Massachusetts a G. L. c. 209A abuse prevention order against the testator in September 2015. It is unclear from the record whether the Massachusetts restraining order was in effect at the time of the testator's death in August 2017.

[4] As John argues, it does not appear that his motion to strike was ever ruled on by the judge.

[5] Elisa did not join the motion to bifurcate, and did not participate in the bifurcated trial.

purpose of proving proper execution of the will. The judge, after objection by Robin and Paul, informed the parties that she was not a handwriting expert and, therefore, she would not decide the issue of the authenticity of signatures; she determined that she would rule at trial (based on G. L. c. 190B, § 3-406 [a]) whether to admit John's proposed extrinsic evidence if and when he moved to offer it.

As a result of this ruling, on January 29, 2019, John filed, and Robin and Paul opposed, a motion to amend his pretrial memorandum to include on his witness list a handwriting expert for the purpose of assisting with the authentication of the testator's and attesting witnesses' signatures; attached to his motion he included, among other things, the expert's written opinion as to the authenticity of the testator's signature, and various exemplars of the testator's handwriting and signature. After a hearing on John's motion held on February 4, 2019, the judge denied John's request to add a handwriting expert to his witness list, and ruled that only the parties and the testator's brother Francis were allowed to testify at trial.[6]

At the February 14, 2019 bifurcated trial, John was the only witness to testify, and the will was the sole exhibit

_____

[6] At this hearing, Robin and Paul informed the judge that they were not pursuing the issues of forgery or undue influence, but only the due execution of the will under § 3-406.

admitted; none of John's proffered extrinsic evidence was allowed in evidence. The judge allowed in the record certain unobjected-to excerpts from Francis's deposition testimony, after deeming him unavailable to testify.[7] After determining that John had failed to meet his burden of proving that the will was executed in conformity with G. L. c. 190B, § 2-502, the judge dismissed John's petition with prejudice. John timely appealed.[8] The sole issue for review on appeal is whether John received a fair hearing on his petition. We conclude that he did not.

Discussion. The proper execution of a will requires that the will be "(1) in writing; (2) signed by the testator . . .; and (3) signed by at least [two] individuals, each of whom witnessed either the signing of the will . . . or the testator's acknowledgement of that signature or acknowledgment of the will." G. L. c. 190B, § 2-502 (a). Here, on its face, the will met the statutory requirements of proper execution. However, because Robin and Paul challenged the validity of the will execution, and because the will is not self-proving, "the

---

[7] The excerpts admitted generally pertained to Francis's discussions with the testator about his need for a will, Francis's familiarity with the attesting witnesses, his relationship with the testator, and the testator's relationship, or lack of relationship, with Robin and Paul.

[8] John subsequently filed a motion to stay the proceedings and a motion for recusal; both were denied.

testimony of at least [one] of the attesting witnesses, if within the [C]ommonwealth, competent and able to testify, is required.  Due execution of a will may be proved by other evidence."  G. L. c. 190B, § 3-406 (a).

It is undisputed that each of the three attesting witnesses was deceased at the time of trial, making it impossible for John, as the proponent of the will, to prove the will's validity through the testimony of at least one of those witnesses.  See Farrell v. McDonnell, 81 Mass. App. Ct. 725, 728 (2012) ("The burden of proving proper execution rest[s] upon the proponent and require[s] [him] to prove that all the formal requirements of the statute were met. . . .  A presumption of proper execution is inferred upon proof of all the signatures" [quotation omitted]).  However, to meet his burden in proving proper execution, the statute provides John an additional option -- proving the will's validity "by other evidence."  G. L. c. 190B, § 3-406 (a).

It was long ago held by the Supreme Judicial Court that

"the death of an attesting witness, or of all the attesting witnesses, is not to defeat the validity of the will, if, in fact, duly executed.  It changes the form of the proof, and allows the introduction of secondary evidence of the due attestation and execution of the will.  Such attestation is then to be shown, as it would be in the case of deeds, by proof of the handwriting of the witness.  That being shown, prima facie, it is to be taken to be true, and to have been put there for the purpose stated in connection with the signature.  It is to be assumed, as regards that witness, that he duly attested the will in the presence of

and at the request of the testator.  In considering the sufficiency and weight of the evidence to establish the due and proper execution of this will, the fact of the death of th[e] witness, and the presumptions that arise from proof of [the witness's] handwriting, are somewhat material. . . .  [I]f nothing appears in other parts of the evidence to control the presumption resulting from proof of [the witness's] handwriting, it may be taken that . . . it was properly made to the signature by the testator."

Leatherbee v. Leatherbee, 247 Mass. 138, 141-142 (1923), quoting Nickerson v. Buck, 12 Cush. 332, 341 (1853).

At trial, John attempted to present "other evidence" to prove proper execution of the will.  First, John testified as to his knowledge of the testator's will, and to confirm the identity of the attesting witnesses.  However, the judge erroneously prohibited John from testifying as to his familiarity with the testator's signature and making a comparison of the signature appearing on the will; John's testimony was limited to discussions that he had with the testator about a new will, and that John had found the will after the testator's death.  In addition, John was permitted to testify as to his retention of a handwriting expert, but he was prohibited from stating the expert's conclusion and from calling that expert as a witness at trial.[9]  The judge referred to John's

---

[9] At the February 4, 2019 hearing on John's motion to amend his pretrial memorandum (which was not on the "eve" of trial, as Robin and Paul suggest), the judge initially erroneously ruled which party was obligated to prove the validity of the will -- putting the burden on Paul and Robin, and stating that they needed to call a handwriting expert to prove forgery.  The judge

"last minute" request to have the expert testify as "trial by ambush."

John also attempted to admit numerous contested exhibits, which he proffered for the purpose of authenticating the testator's and the deceased attesting witnesses' signatures, and proving proper execution,[10] but the judge denied the admission of these exhibits. The judge also declined to allow any evidence regarding the comparison of signatures appearing on the will to those contained within the contested exhibits -- extrinsic evidence that potentially could have verified the signatures and validated the will. This too was error.[11] See Okoli v. Okoli (No. 1), 81 Mass. App. Ct. 371, 379 n.13 (2012) ("the trier of

---

denied John's motion to amend his pretrial memorandum to add his handwriting expert to the witness list.

[10] At the January 23, 2019, pretrial conference, the parties submitted to the judge binders of the proposed contested and uncontested trial exhibits; the will was the only uncontested exhibit. According to John, the contested exhibits he proffered consisted of various court pleadings, recorded deeds, and recorded trust documents containing samples of the testator's signature, as well as the signatures of the attesting witnesses. In support of the contested exhibits, John suggested that these documents, signed in close proximity to the execution of the will, established the testator's intent in developing an estate plan, which would include the preparation of a will. Counsel for Paul and Robin argued at the hearing that none of the extrinsic evidence proffered by John was probative of proper execution of the will. The judge stated that she was not a handwriting expert, and reiterated that the trial was focused only on the validity of the will.

[11] The judge improperly excluded portions of Francis's deposition testimony that included potential evidence as to the authentication of the testator's signature.

fact can determine the authenticity of a handwriting for herself when, as in this case, there are genuine specimens with which to compare it"); G. L. c. 190B, § 3-406 (a) ("Due execution of a will may be proved by other evidence").

By denying John the opportunity to present extrinsic evidence for consideration in determining proper execution of the will, the judge deprived John of a "full and fair hearing upon the whole evidence" in violation of due process. See Adoption of Georgia, 433 Mass. 62, 65 (2000), quoting Preston v. Peck, 271 Mass. 159, 164 (1930). Contrast Matter of Moran, 479 Mass. 1016, 1020-1021 (2018) (respondent provided fair hearing when no limitation was placed on testimony and he was allowed full access to copious pages of notes during testimony). We do not here decide whether the extrinsic evidence proffered by John was sufficient to prove the validity of the will, but rather conclude only that the judge erred in restricting John's presentation of that evidence in violation of G. L. c. 190B, § 3-406. Therefore, John must be provided the opportunity to present admissible "other evidence" to prove the will as instructed by the statute, and may do so without the aid of expert testimony. In addition, the judge may revisit the issue of permitting expert testimony on the subject. See G. L. c. 190B, § 3-406 (a).

    Conclusion.  For the foregoing reasons, we reverse the March 14, 2019 decree and remand the matter for proceedings consistent with this opinion.  On remand, the matter should be heard by another judge of the Probate and Family Court.[12]

                        So ordered.

---

[12] The request of Robin and Paul for appellate attorney's fees and double costs is denied.